James E. KOLLS and Life Investors,
Inc., Plaintiffs,

v.

AETNA CASUALTY AND SURETY
COMPANY, Defendant.

Civ. No. 11–315–C–2.

United States District Court,
S. D. Iowa, C. D.

Jan. 14, 1974.

Max Putnam, Des Moines, Iowa, for plaintiffs.

Eugene Davis and Steven C. Cross, Des Moines, Iowa, for defendant.

MEMORANDUM AND ORDER SUSTAINING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

HANSON, Chief Judge.

The Court has before it cross-motions for summary judgment filed by the defendant on March 12, 1973 and by the plaintiffs on March 30, 1973. The defendant alleges in its motion for summary judgment that there is no dispute as to material facts necessary to grant summary judgment and that the defendant is entitled to summary judgment as a matter of law. The plaintiffs in their motion for summary judgment are requesting only a partial summary judgment and claim that there is no material issue of fact as to certain portions of the Complaint and that they are entitled to partial summary judgment as a matter of law as to these portions of the Complaint.

The plaintiffs in this cause of action are suing to collect additional sums which they claim are due them under an insurance policy written by the Aetna Casualty and Surety Company. (Exhibit "A" attached to the Complaint.) This claim arose out of a fire which was covered by this policy written by Aetna. Although the defendant paid a sum of $631,955.00 under this policy, the plain-

tiffs claim that the defendant arbitrarily and willfully and in bad faith withheld the sum of $54,920.00. The plaintiffs claim this amount was due under the Replacement Cost Endorsement and the settlement agreement and the plaintiffs claim punitive damages because of the withholding of these funds. The defendant claims that the plaintiffs do not qualify to recover this sum under the Replacement Cost Endorsement and that all sums due under the settlement agreement have been paid.

The plaintiffs in this cause of action are James E. Kolls and Life Investors, Inc. Plaintiff James E. Kolls is a citizen and resident of Ohio and the plaintiff Life Investors, Inc. is an Iowa corporation and a citizen of Iowa. The defendant Aetna Casualty and Surety Company is a foreign corporation doing business in Iowa and a citizen of the State of Connecticut. This Court has jurisdiction of this cause by virtue of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds $10,000.

After an extensive amount of time reviewing the pleadings and exhibits in this cause, it appears that the controversy in this cause of action is mainly an interpretation of the insurance contract and the conditions specified for recovery thereunder. The plaintiffs have admitted the authenticity of 70 documents submitted to them by the defendant and have only reserved objections based upon relevancy. The defendant has admitted the authenticity of over 200 documents submitted to it by the plaintiffs and has only reserved objections based upon relevancy. The defendant does not deny that it carried a policy of insurance that covered the loss which is the basis for this cause of action nor does it deny that a Replacement Cost Endorsement was in effect. The controversy is whether the plaintiffs under the facts as contained in these pleadings and undisputed by the parties were entitled to recover the full replacement cost under this Replacement Cost Endorsement. The second issue appears to be whether

there was a contract of estoppel that would compel the defendant to pay the sum of $686,875.00 to the plaintiffs regardless of the conditions in the policy.

The Court first reviews the facts in this case to the time of the fire. Super City, a shopping center located in Denver, Colorado went into operation in March, 1962. This shopping center was occupied by two main tenants: The National Tea Company grocery store and a Spartan Company discount store. On December 20, 1965 a fire occurred which destroyed the greatest portion of the shopping center structure. Insurance on this structure was carried by the Aetna Casualty and Surety Company under Policy No. FP233599 with endorsements. Following this fire, a Notice of Claim for Loss was made to the insurer, as the carrier of the fire insurance on the shopping center. A formal demand for payment of the face amount of the policy which was $935,000 was made by the owners on April 18, 1966. Under the terms of the policy the insured was not entitled to recovery of the full face value of the policy, but a lesser amount that was to be later determined by the parties.

Before a discussion of the settlement agreed upon by the parties, the Court first considers and construes the terms of the insurance policy.

## CONSTRUCTION AND INTERPRETATION OF THE INSURANCE POLICY

The basic insuring clause of the insurance policy No. FP233599 provides as follows:

"In consideration of the provisions and stipulations herein or added hereto and of the premium above specified, the Stock Insurance Company . . ., for the term of years specified above . . . at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the insured named above and legal representative, to the extent of the *actual cash value* of the property at the time of loss, but not

exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, . . . against all direct loss by fire. . . ." (Emphasis added.) Under the insuring paragraph in the basic policy the insured is entitled to recover an amount not exceeding the "actual cash value of the property at the time of loss." This portion of the policy, however, does not appear to be at issue between these parties. What appears to be at issue is what is termed the Replacement Cost Endorsement to this policy. The plaintiffs claim that they are entitled to recover the replacement cost under this Replacement Cost Endorsement. The defendant claims that the plaintiffs have not fulfilled all the conditions precedent to recovery under this Replacement Cost Endorsement.

The Replacement Cost Endorsement in paragraph 1 provides as follows:

". . . The provisions of this policy are amended to substitute the term 'replacement cost' for the term 'actual cash value' wherever it appears in this policy, thereby eliminating any deduction for depreciation, subject, however, in all other respects to the provisions of this endorsement and of the policy to which this endorsement is attached."

This endorsement is intended to allow the insured to recover an amount in excess of the actual cash value of the property if certain conditions are complied with.

Paragraph 3 of the Replacement Cost Endorsement provides:

"The insurance [sic] may elect first to make claim under this policy in accordance with its provisions, disregarding this endorsement, . . . and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions, provided this Company is notified in writing within 180 days after loss of

the Insured's intent to make such further claim."

This provision of the endorsement allows the insured to first recover the "actual cash value" of his loss under the basic policy and then an additional sum to bring his total recovery up to the full "replacement cost" of his loss if the insured complies with the provisions of the Replacement Cost Endorsement.

Paragraph 4 of the Replacement Cost Endorsement provides a limitation for recovery of the insured under the policy including the Replacement Cost Endorsement. This provision is as follows:

"This Company's liability for loss under this policy including this endorsement shall not exceed the smallest of the following amounts (a), (b) or (c)

a) The amount of this policy applicable to the damaged or destroyed property;

b) The replacement cost of the property or any part thereof, identical with such property on the same premises and intended for the same occupancy and use;

c) The amount actually and necessarily expended in repairing or replacing said property or any part thereof on the same premises and intended for the same occupancy and use."

This portion of the Replacement Cost Endorsement restricts the Company's liability for loss if the party elects to recover under the policy including the Replacement Cost Endorsement. This policy limitation is important in determining the outcome of this controversy.

Paragraph 5 of the Replacement Cost Endorsement provides as follows:

"This Company shall not be liable under this policy including this endorsement for any loss—

a) Occasioned by enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings, unless

such liability has been specifically assumed under this policy;

b) Unless and until the damaged property is actually repaired or replaced with due diligence and dispatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss."

This provision of the Replacement Cost Endorsement restricts the application of the Replacement Cost Endorsement to the situation where the damaged property is actually repaired or replaced. There is a controversy in this lawsuit as to whether it is necessary to fully replace the property before a recovery may be made under the Replacement Cost Endorsement. Because of the Court's ruling on paragraph 4 of the Replacement Cost Endorsement and its application to this case, it will not be necessary to rule on the applicability of paragraph 5.

In summary, under this policy the insured upon a loss that is covered by the policy may first elect to recover the actual cash value of his loss under the basic policy. If the insured intends to replace the destroyed property, the insured may recover under the Replacement Cost Endorsement subject to the limitations in paragraph 4 of this endorsement and subject to the limitation that repairs must actually be made to the property.

The Court must now determine whether the undisputed facts in this cause of action allow the Court to apply this contract interpretation to the case at hand, such that the rights of the parties can be determined as a matter of law. The question of concern to the Court is whether the alleged factual disputes between the parties are a matter of basic factual dispute or a matter of drawing ultimate legal conclusions from the facts which are evident in the record. The tremendous volumes of exhibits which have been introduced into the record and which are undisputed by the parties except as to interpretation give a general outline of what occurred following the fire on the plaintiffs' property.

The facts as established by the admitted documents, both those submitted by the defendant and by the plaintiffs are as follows. The numbered exhibits were submitted by the defendant to the plaintiffs and were admitted by the plaintiffs as to authenticity. The lettered exhibits were submitted by the plaintiffs to the defendant and were admitted by the defendant as to authenticity.

Originally, Mr. William B. McDonald who was representing the interests of the plaintiffs, made a claim on behalf of the owners of the property for the full policy amount of $935,000.00 indicating to the General Adjustment Bureau who was handling this claim for Aetna that the property was a total constructive loss. Defendant's Exhibit 5 which indicates this demand for payment of the full policy limits was sent by William B. McDonald to the General Adjustment Bureau, Inc. on April 18, 1966. An inspection by Donald S. Rand, who is a structural engineer, indicated that the fire did not destroy the entire structure. Mr. Rand inspected the properties and submitted to Mr. Jerry E. Rank of the Maritime Construction Company an estimate of the damage to the property which indicated that the Spartan portion of the shopping center was fully destroyed but that that portion of the shopping center occupied by the Big D. Market was not fully destroyed and that a portion of the structure could be used in the reconstruction of the shopping center. (Plaintiffs' Exhibits B and C.)

Negotiations went on between the General Adjustment Bureau, Inc. and the plaintiffs relative to a final settlement on the insurance claim. On July 22, 1966 a settlement was reached between William B. McDonald and H. C. King as to the amount of the fire loss. (Plaintiffs' Exhibit TT–3.) On August 18, 1966 the General Adjustment Bureau, Inc. submitted to Aetna Casualty and Surety Company a seventh and final report, (Plaintiffs' Exhibit E), which evidenced to Aetna Casualty and Surety Company final agreement as to loss on this property as follows. The insured's

second revised claim submitted July 12, 1966 claimed a sum of $791,645.00. This figure was adjusted to $686,875.00 for full replacement cost of the structure. Depreciation was calculated at $54,920.00 to be paid if and when full repairs are completed and a supplemental claim was made for this amount. The claim as adjusted for the final figure was $631,955.00 to be supplemented by an additional $54,920.00 if and when full repairs are completed. The agreed upon actual cash value loss was $631,955.00.

A sworn statement in proof of loss was submitted to the Aetna Casualty and Surety Company on behalf of the plaintiffs indicating that the whole loss and damage was $631,955.00. (Plaintiffs' Exhibit D–2.) Under the proof of loss submitted May 24, 1966 (Defendant's Exhibit 10) and the proof of loss submitted August 4, 1966 (Plaintiffs' Exhibit D–2) the plaintiffs were paid a total of $631,955.00 which was labeled on the proof of loss as the whole loss and damage.

In addition to their claim for the actual cash value loss to this property, the insured also made a claim for the full cost of repair or replacement under the Replacement Cost Endorsement as evidenced by defendant's Exhibit 15 and plaintiffs' Exhibit D–1. This exhibit is a statement as to full cost of repair or replacement under the replacement cost coverage subject to the terms and conditions of this policy and was submitted to Aetna Casualty and Surety Company by the insured Title Guarantee Company, a Colorado Corporation under Trust No. 166720. This form stated the *full* replacement cost of said property at the time of loss was $792,960.00 with the full cost of repair or replacement at $686,875.00. As noted earlier the property was not a full loss. (Plaintiffs' Exhibits B and C.) This form indicated that the maximum amount of loss under this policy under the replacement cost coverage is $54,920.00 which is the difference between the $631,955.00 paid under the proofs of loss and the cost of re-

pair or replacement figure of $686,875.-00. The insured was receiving the amount under the two proofs of loss which totalled the $631,955.00 and this form indicates that the insured understood that it could receive up to $54,920.00 under the replacement cost coverage if a supplemental claim were filed in accordance with the terms and conditions of the replacement cost coverage.

A letter by William B. McDonald who indicates that he is the attorney in fact for all the owners by power of attorney dated January 18, 1966 (Plaintiffs' Exhibit L–1) indicates that the attorney in fact for the owners of the property understood what the settlement basis was. (Defendant's Exhibit 19). This letter indicates that the total settlement was $686,875.00 plus demolition and debris expense paid of $39,270.00 less hold-back under the Replacement Cost Endorsement until construction was completed of $54,920.00. This letter indicates that Mr. McDonald understood that the hold-back in the amount of $54,920.00 would be paid to the owners when the reconstruction was completed.

Later communications from William B. McDonald, attorney for the plaintiffs who negotiated the settlement, indicate an understanding of the terms of the settlement agreement similar to the understanding of the settlement by Aetna. On January 6, 1967 Mr. McDonald addressed a letter to Mr. H. C. King, Regional Manager of the General Adjustment Bureau, Inc., in which he stated that the owners did contemplate repair or replacement of damages at the subject property and would claim $54,920.00 being withheld under the Replacement Cost Endorsement. (Defendant's Exhibit 22.) On February 10, 1967 Mr. McDonald addressed a letter to certain owners of the property, Mr. John F. Sweeney, Mr. Ben Margulies, and Mr. James E. Kolls. (Defendant's Exhibit 24.) In this letter he indicates that the total settlement was $686,875.00 and that under the Replacement Cost Endorsement the insurance company with-

held the sum of $54,920.00 resulting in a net settlement check of $631,955.00. In a letter dated May 9, 1967 to Mr. David J. Coggon, David J. Coggon Management Co., Mr. McDonald stated that the fire loss was finally settled for $686,875.00 and that the Company retained $54,920.00 under the Replacement Cost Endorsement of the policy which cannot be claimed by the owners until proof of rebuilding has been submitted to the Insurance Company. (Defendant's Exhibit 31.) On July 6, 1967 Mr. McDonald addressed a letter to Mr. H. C. King, Regional Manager of the General Adjustment Bureau, Inc., indicating to Mr. King that replacement of the property was being commenced and that a claim would be made for the sums held by the Company under the Replacement Cost Endorsement. (Defendant's Exhibit 34.)

At all times the defendant was consistent in its position that a sum of $686,875.00 would have to be expended in repair and replacement of the damaged structures before the sum of $54,920.00 due under the Replacement Cost Endorsement would be paid. This is exhibited by communications between the adjuster for Aetna, H. C. King, and Aetna Casualty and Surety Company and communications between Aetna's adjuster, H. C. King, and the plaintiffs and their predecessors in interest. (See plaintiffs' Exhibits E, AA, BB, CC, GG, HH, JJ, NN, OO, QQ, RR, UU, WW, XX–3, CCC, and HHH, and defendant's Exhibits 44 and 47.

On November 29, 1967 Mr. John F. Sweeney, secretary of Gains Guaranty Corporation, addressed a letter to Mr. H. C. King indicating that they had completed construction on 33,000 sq. ft. and wished to apply for disbursement of the funds withheld. (Defendant's Exhibit 38.) On February 5, 1968 Mr. H. C. King, Manager of the Fire Division of the General Adjustment Bureau indicated to Mr. Sweeney that they would not be eligible for the replacement cost portion of the $686,875.00 replacement cost until that amount had been expended in the replacement of the building. (Defendant's Exhibit 44.) It was the opinion of Mr. H. C. King that only $402,242.22 of applicable cost had been incurred to date of that letter. Mr. John F. Sweeney, secretary of Gains Guaranty Corporation, disagreed with Aetna's interpretation of the fire insurance policy, and by letter of February 19, 1968 demanded payment of the sums withheld under the Replacement Cost Endorsement in spite of the fact that $686,875.00 had not been expended on the property. (Defendant's Exhibit 45.) On March 12, 1968 Mr. H. C. King of the General Adjustment Bureau again informed the plaintiffs that they would need to expend an amount equal or equivalent to $686,875.00 before the $54,920.00 could be released under the Replacement Cost Endorsement. (Defendant's Exhibit 47.)

The determination of whether the full $686,875.00 had to be expended before claim could be made for the sum due under the Replacement Cost Endorsement is a legal determination which can be made by this Court. This is a matter of construing the contract documents as noted before in this opinion. The Court holds later in this Memorandum that it was necessary to expend an amount in excess of $631,955.00 in repair and replacement of the damaged structures before claim could be made under the Replacement Cost Endorsement.

## THE COMPLAINT

The Court next looks at the Complaint itself. The plaintiffs allege that the real property known as 7340–60 W. 44th Avenue, Denver, Colorado, was insured for fire loss by the defendant pursuant to policy of insurance attached as Exhibit A to the Complaint. The defendant does not deny that the policy of insurance attached as Exhibit A was in effect at the time of a fire loss to the covered property. The Complaint alleges in paragraph 6 that there was a Replacement Cost Endorsement to the policy. The defendant admits that there was a Replacement Cost Endorsement in effect

for this policy. The plaintiffs allege in paragraphs 5 and 7 that a settlement of $686,875.00 was negotiated and agreed to between the parties. The defendant admits that it was agreed that the cost of repair or replacement would be $686,875.00. Defendant, however, states that the insured property had an actual cash value of $631,955.00 and that the additional amount of depreciation of $54,920.00 would not be payable unless the damaged property was actually repaired or replaced. The plaintiffs allege in paragraphs 7, 8, and 9 that the defendant entered into a contract by estoppel to pay the $686,875.00 and that the withholding of $54,920.00 was contrary to this contract by estoppel.

The plaintiffs allege that both under the Replacement Cost Endorsement of the policy and under the contract by estoppel made after the fire and relied upon by the plaintiffs that the defendant was obligated and liable to pay $686,875.00 including the $54,920.00 which the defendant refused to pay until all repairs had been made to the property. The defendant states that it paid the sum of $631,955.00 and would have paid the additional $54,920.00 when the plaintiffs complied with the conditions precedent within the insurance policy. The defendant prays that the plaintiffs' Complaint be dismissed.

There appear to be two major issues in this case. The first is whether there was a contract by estoppel under which the defendant was obligated to pay a sum of $686,875.00. The second issue is whether the plaintiffs are entitled to recover the sum of $54,920.00 under the Replacement Cost Endorsement regardless of whether the property is *fully* replaced and the sum of $686,875.00 spent in the replacement of the property.

On March 16, 1973 the plaintiffs filed a Motion for Leave to Amend Complaint. This Amendment to the Complaint does not materially change the issues in this lawsuit nor does it prevent the Court from making a dispositive ruling on the motions for summary judgment. The Court will allow the Amendment and consider the summary judgment motions in light of this Amendment.

## RECOVERY UNDER THE REPLACE-MENT COST ENDORSEMENT

As stated on page 5 of plaintiffs' Motion for Summary Judgment, this Court is bound to give legal effect to the clear language of the contract in this case and not to make a new contract for the parties by "construction" of clear and unambiguous terms in a written contract. Cunningham Brothers, Inc. v. City of Waterloo, 254 Iowa 659, 668, 117 N.W.2d 46, 51 (1962); Gendler Stone Products Co. v. Laub, 179 N.W.2d 628, 630 (Iowa Sup.Ct.1970); Bruhl v. Thul, 257 Iowa 889, 892–893, 134 N.W. 2d 571, 573–574 (1965).

On pages 3, 4 and 5 of this Memorandum and Order, the Court has reviewed the basic paragraphs of this insurance policy which pertain to a recovery under the Replacement Cost Endorsement. Under the plain meaning of these terms of the Replacement Cost Endorsement, it is clear that the plaintiffs have not complied with the conditions precedent to recovery under that endorsement.

As noted on page 4 of this Memorandum, the insured may elect first to make a claim under this policy in accordance with the provisions disregarding the Replacement Cost Endorsement. The recovery under the basic policy without the Replacement Cost Endorsement would be the actual cash value of the loss. The policy itself does not specifically define the term "actual cash value", but it has been interpreted judicially in many cases and the policy indirectly indicates a proper interpretation. In Britven v. Occidental Insurance Co., 234 Iowa 682, 13 N.W.2d 791, 794 (1944), the Iowa Supreme Court stated:

"Almost invariably it may also be shown, as bearing on the question of actual value, what it would cost at the time in question to replace the building. Of course, where the reproduced building would be more valuable than the former one, because of its age or condition, deduction from such cost

should be made for such depreciation . . . . " (cases cited) "These and other authorities recognize that the principal factors in determining the actual value of a building are usually the original cost, the cost of replacing it, and a proper allowance for depreciation from use, age and other like causes." (cases cited)

See also Knuppel v. American Insurance Co., 7 Cir., 269 F.2d 163, 166; Higgins v. Insurance Company of North America, 256 Or. 151, 469 P.2d 766, 772–774 (1970).

In paragraph 1 of the Replacement Cost Endorsement, it is stated:

"In consideration of premium included . . . the provisions of this policy are amended to substitute the term (replacement cost) for the term 'actual cash value' wherever it appears in this policy, *thereby eliminating any deduction for depreciation,* subject, however, in all other respects to the provisions of this endorsement and of the policy to which this endorsement is attached." (Emphasis added.)

This section of the policy contemplates the difference between "actual cash value" and replacement cost as being a deduction for depreciation.

Paragraph 3 of the Replacement Cost Endorsement also provides that the insured may make further claim for any additional liability brought about by the Replacement Cost Endorsement in accordance with its provisions, provided that the Company is notified in writing within 180 days after the loss of the insured's intent to make further claim. Two Proofs of Loss were submitted on behalf of the plaintiffs to the defendant under which a total of $631,955.00 was paid. (Plaintiffs' Exhibit D–2 and defendant's Exhibit 10). This $631,955.00 was labelled as the whole loss and damage upon this Proof of Loss form. All of the documentary evidence before the Court indicates that this payment of $631,955.00 was the amount due the plaintiffs under the basic policy provisions without the Replacement Cost Endorsement. None of the documents submitted by the plaintiffs or action taken by the plaintiffs as indicated by documents submitted to the Court indicate any other interpretation of the amounts paid under these Proofs of Loss submitted by the plaintiffs to the defendant. If the plaintiffs were to recover an additional sum which might be due them under the basic policy *including* the Replacement Cost Endorsement, they would be required to comply with the terms of that endorsement.

As noted before on page 4 of this Memorandum, paragraph 4 of the Replacement Cost Endorsement provided a limitation for recovery of the insured under the policy including the Replacement Cost Endorsement. This provision limited the Company's liability for loss as follows:

"This Company's liability for *loss under this policy including this endorsement* shall not exceed the smallest of the following amounts (a), (b) or (c)

a) the amount of this policy applicable to the damaged or destroyed property;

b) the replacement cost of the property or any part thereof, identical with such property on the same premises and intended for the same occupancy and use;

c) the amount *actually and necessarily expended* in repairing or replacing said property or any part thereof on the same premises and intended for the same occupancy and use." (Emphasis added.)

This provision is a limitation on the total liability of the Company for loss under the policy including the Replacement Cost Endorsement. If an insured elects to recover under the Replacement Cost Endorsement, paragraph 4 of the Replacement Cost Endorsement gives a limitation for *total* recovery under the *whole* insurance policy. The Court emphasizes this point because of the vigorous effort of the plaintiffs' attorney to convince

the Court that there could be a double recovery under this policy. There are not separate recoveries under the basic policy versus the basic policy with Replacement Cost Endorsement. Paragraph 4(c) limits the *total* recovery of the plaintiffs if they recover a sum under the Replacement Cost Endorsement.

Under part (a) of this provision the amount of the policy applicable to the damaged or destroyed property would be the policy limits of $935,000.00. Under part (b) the replacement cost of the property or any part thereof which would have to be replaced in this instance was the amount of $686,875.00 as shown by plaintiffs' Exhibit 15. The full replacement cost of the property at the time of loss as shown by plaintiffs' Exhibit 15 was $792,960.00. The full cost of repair or replacement of the part that was destroyed is shown as $686,875.00 (Plaintiffs' Exhibit 15). The amount recoverable under part (c) is the amount actually and necessarily expended in repairing or replacing said property on the same premises and intended for the same occupancy and use. Under this clause of the policy the plaintiffs would be entitled to a lesser amount than what they were actually paid, the sum of $631,955.00. It appears that the plaintiffs only spent $510,759.-88 on repairing and replacing the property and it appears that a portion of this may not be allowable under part (c). Therefore, the maximum that the plaintiffs could recover if they were to insist on a recovery under the provisions of the Replacement Cost Endorsement would be a total of $510,759.88. Of course, the plaintiffs would not wish to recover under this provision of the policy when under the basic policy they recovered a sum of $631,955.00 which is a greater amount. Therefore, the Replacement Cost Endorsement is not of value to the plaintiffs until they have expended an amount greater than what they could recover under the basic policy coverage which was the $631,955.00.

■ It is clear from paragraph 4 and paragraph 5 of the Replacement Cost Endorsement that it is necessary for the insured to repair and replace the property and expend an amount in excess of $631,955.00 before they may recover under the Replacement Cost Endorsement.

In summary of this section of this Memorandum, the Court concludes that the insured under the insurance policy in this lawsuit may elect to recover under the basic policy disregarding the Replacement Cost Endorsement or may make a further claim for any additional recovery under the Replacement Cost Endorsement if the insured complies with the conditions precedent in that section of the policy. In this case the Replacement Cost Endorsement application is restricted by paragraphs 4 and 5 of that endorsement. This is the situation where the damaged property is actually repaired or replaced and with the further restriction of part (c) of paragraph 4 of the endorsement that the amount actually and necessarily expended exceeds the amount recoverable under the basic policy provisions. It is clear in this case that the plaintiffs have not spent an amount in excess of the basic policy recovery of $631,955.00. Therefore, they are not entitled to any recovery under the Replacement Cost Endorsement of this policy.

There is no dispute of fact as to what was expended by the plaintiffs in repair and replacement of this property. Because of difficulties in finding new lessees for the Spartan portion of this shopping center, the plaintiffs simply were not able to fully reconstruct and replace the damaged property and expend in repair and replacement a sum in excess of $631,955.00. Accordingly, the Court concludes as a matter of law that the plaintiffs are not entitled to recover under the Replacement Cost Endorsement of this insurance policy.

The Supreme Court of Oregon reached a similar result in the case of Higgins v. Insurance Company of North America, 256 Or. 151, 469 P.2d 766 (1970). In that case the Court was considering a similar replacement cost endorsement provision to the case at hand:

"(5) This Company's liability for loss under Coverages A and B of this poli-

cy, including this replacement cost provision, shall not exceed the smallest of the following amounts: (a) The limit of liability for Coverage A or B, whichever applies; (b) The replacement cost of the building structure or any part thereof identical with such building structure on the same premises and intended for the same occupancy and use; (c) The amount actually and necessarily expended in repairing or replacing said building(s) or any part thereof intended for the same occupancy and use." 469 P.2d at 771.

That policy also had a provision similar to paragraph 3 of the Replacement Cost Endorsement in this case:

"(7) The insured may elect to disregard this replacement cost provision in making claim under this policy, but such election shall not prejudice the Insured's right to make further claim within a reasonable time after loss for any additional liability brought about by this replacement cost provision." 469 P.2d at 771.

The Oregon Supreme Court in construing the above provisions of the insurance policy in the *Higgins* case made the following construction:

"The reasons for limiting recovery to the amount actually expended for repair or replacement seem reasonable, and such a limitation should be enforced if it is clearly stated in the insurance contract. We think that the language employed in the policy under consideration is sufficiently clear, and that the intent to limit the company's liability to amounts actually expended is apparent from a careful reading of the replacement cost provision. We conclude that since plaintiffs have not expended anything in repairing or replacing the insured building they are not eligible to recover under the 'Replacement Cost' extension of the policy. For a similar conclusion see Bourazak v. North River Insurance Co., 379 F.2d 530 (7th Cir. 1967)." 469 P.2d at 774.

This Court also concludes that the language of paragraph 4 of the Replacement Cost Endorsement is clear in providing that the Company's liability for loss is limited to the amount actually and necessarily expended in repairing or replacing said property or any part thereof. It is clear from the uncontradicted evidence in this case that the plaintiffs have not expended an amount in excess of that amount recoverable under the basic policy provisions, and thus they are not entitled to recover under the Replacement Cost Endorsement.

## CONTRACT BY ESTOPPEL

The plaintiffs allege that a contract by estoppel in addition to the Replacement Cost Endorsement itself requires that the defendant pay the full cost of repair or replacement of $686,875.00 irregardless of whether there is complete replacement of the property and irregardless of whether the sum of $686,875.00 is spent in replacement and repair of the buildings. The plaintiffs are apparently arguing that a settlement contract between the parties superseded the provisions of the insurance contract and that the insurance company defendant had assented to pay the whole $686,875.00 which included a sum for depreciation under the Replacement Cost Endorsement.

In paragraph 9 of the defendant's Motion for Summary Judgment, the defendant states that there is not a shred of evidence of any writing or conduct on the part of the defendant giving rise to a claim that the defendant is bound by estoppel to pay any additional amount other than the $631,955.00 already paid.

The Court has reviewed all of the seventy some documents submitted by the defendant and admitted by the plaintiffs as to authenticity and the Court has also reviewed the approximately two hundred documents submitted by the plaintiffs and admitted by the defendant as to authenticity. The plaintiffs claim that these documents establish that there was a contract by estoppel under which the

defendant agreed to pay a sum of $686,875.00.

Not only does the Court not find any evidence or any document to support the claim of the plaintiffs that there was a contract by estoppel, but the documents submitted to the Court by both the plaintiffs and the defendant establish that the plaintiffs at all times understood the nature of the settlement for this loss. These facts have been reviewed by the Court on pages 6 to 9 of this opinion. The attorney for the plaintiffs who negotiated the settlement indicated his understanding that the plaintiffs were to receive a sum of $631,-955.00 to be supplemented by an additional $54,920.00 to be paid under the Replacement Cost Endorsement if and when repairs were completed and a supplemental claim made. Pursuant to this settlement the plaintiffs submitted Proofs of Loss totalling $631,955.00 to the defendant which the defendant paid. Constant referral by the plaintiffs in their communications with the defendant indicate that at all times the parties were relying upon the conditions and terms of the insurance policy to establish their rights in this situation and not a superseding contract by estoppel. There is no evidence of a contract settlement entered into by the parties that did not rely upon fully the terms of the insurance policy which was then in force and effect.

It is true as alleged by the plaintiffs that the parties agreed that the replacement or repair cost of this loss was to be $686,875.00. All of the doucments including the proofs of loss claiming only $631,955.00, however, indicate that the full replacement cost of $686,875.00 would not be payable unless the conditions of the insurance contract were met.

■ The plaintiffs have fully failed to demonstrate to the Court that there is any evidence to raise a material issue of fact as to whether a contract by estoppel existed for the payment of $686,875.00. All of the documents submitted by both the plaintiffs and the defendant to this Court indicate that there was no contract by estoppel for a payment of this amount and that the plaintiffs understood at all times that there were certain conditions precedent to their recovering the $54,920.00 under the Replacement Cost Endorsement, although there was some disagreement as to what conditions had to be met to recover under this endorsement. (i. e. The plaintiffs felt that a partial repair or replacement was sufficient to satisfy the conditions precedent to recovery under the Replacement Cost Endorsement while the defendant asserted that $686,875.00 must be expended before the plaintiffs could recover under the Replacement Cost Endorsement.) In any event, the Court concludes that the plaintiffs have set forth no facts and no documentary evidence which establishes a contract by estoppel and that there has been no material issue of fact on this point raised in opposition to the defendant's Motion for Summary Judgment. The Court finds that there was no contract by estoppel and that this issue can be determined as a matter of law pursuant to the provisions of Rule 56(e) of the Federal Rules of Civil Procedure.

## CLAIM FOR PUNITIVE DAMAGES

■ The basis for the plaintiffs' claim for punitive damages in addition to the $54,920.00 claimed is that this amount was willfully withheld in bad faith in order to profit out of the previous reliance of the plaintiffs upon the settlement agreement. The Court's finding that $54,920.00 was not unjustifiably withheld of course renders the claim for punitive damages moot. Since the $54,920.00 was not wrongfully withheld and the plaintiffs received what they were entitled to receive under the settlement agreement and the insurance policy, there is no claim established for punitive damages.

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The Court has reviewed the plaintiffs' Motion for Summary Judgment and the

Resistance thereto. Given the conclusions of law reached in ruling upon the defendant's Motion for Summary Judgment, the plaintiffs' Motion for Summary Judgment must be overruled in its entirety. The plaintiffs misconstrue the meaning of the insurance contract and reach legal conclusions contrary to the undisputed evidence upon which they rely, being the plaintiffs' and defendant's exhibits.

## CONCLUSION

The Court concludes that there was no contract by estoppel as set forth by the plaintiffs for the payment of $686,955.-00. At all times, as indicated by the documentary evidence submitted by the plaintiffs and the defendant, the plaintiffs understood the settlement agreement to be in accordance with the provisions of the insurance policy and the Replacement Endorsement. According to the plain terms of the contract, the plaintiffs were required to spend an amount in excess of $631,955.00 in repairing and replacing the damaged structures before they would be entitled to recover an amount due them under the Replacement Cost Endorsement. The undisputed facts in this case establish that an amount less than $600,000.-00 was spent in the repair and replacement of this shopping center. Therefore, there is no amount due the plaintiffs under the Replacement Cost Endorsement. Plaintiffs are also entitled to no punitive damages since no amount was wrongfully withheld by the defendant. The Court concludes that no dispute of material fact has been raised by the plaintiffs to prevent the granting of summary judgment as a matter of law for the defendant in this case.

According to the foregoing memorandum, it is hereby ordered that the plaintiffs' Motion for Leave to Amend Complaint filed March 16, 1973 is sustained.

It is further ordered that the plaintiffs' Motion for Summary Judgment filed March 30, 1973 is overruled in its entirety.

It is further ordered that the defendant's Motion for Summary Judgment filed March 12, 1973 is sustained.

It is further ordered that the Complaint as amended is dismissed in its entirety.