**GUARANTY COUNTY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**Donald WILLIAMS, Appellee.**

No. 07–86–0148–CV.

Court of Appeals of Texas,
Amarillo.

May 12, 1987.

**58**

Robert L. Duncan, Crenshaw, Dupree & Milam, Lubbock, for appellant.

Quinn Brackett, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

## ON MOTION FOR REHEARING

REYNOLDS, Chief Justice.

Guaranty County Mutual Insurance Company brought this appeal from a bench-trial judgment decreeing its liability for a theft loss suffered by Donald Williams, the insured under its policy. We reformed and, as reformed, affirmed the trial court's judgment. In the light of the insurance company's motion for rehearing, we withdraw our original 10 March 1987 opinion, set aside our judgment rendered on that date, overrule the motion for rehearing, and issue this substituted opinion expressing the rationale for the reformation and affirmance of the judgment below.

The insurance company issued its policy insuring Williams' 1977 Cadillac Seville automobile. While the policy was in force on 18 January 1984, four locked wheel covers were stolen from the automobile in Lubbock and never recovered. The insurance policy provided that the company's liability is, as material to this cause, the lesser of (1) the actual cash value of the stolen property, or (2) the amount necessary to replace the property with other of like kind and quality, less a deductible of $90. In this connection, the company had the contractual right to pay for the loss in money or to replace the stolen property.

Williams made a claim for his loss and, as he was requested by the local insurance agent through whom the policy was secured, Williams obtained and furnished two estimates to replace and install the wheel covers. The two estimates, one for $830.58 and the other for $862.23, were dated 18 January 1984. At some unspecified time, Williams, not having heard about his claim, called a number furnished by the local insurance agent, and talked to two people about his claim. Not receiving an answer satisfactory to him, Williams contacted the local insurance agent, who advised him to hire an attorney. On 29 February 1984, Williams' attorney advised the insurance company of his retention and stated that if Williams' claim for $862.23 was not paid in ten days, suit would be filed. The claimed amount was not paid and the action underlying this appeal was filed on 22 May 1984.

By a written communication dated 2 February 1984, the claims supervisor notified Williams that replacement of his wheel covers will be handled by National Wheelcover Service, Inc., which is located in Fort Worth; furnished National's telephone number; asked that Williams call National to arrange replacement; and advised that Williams will pay his $90 deductible to National, which will bill the company direct for the balance. Without identifying the recipient of the call, Williams called and

talked to an unnamed secretary, who told him it was fine to handle the replacement that way and said "they just deduct the $90.00." Williams believed that he did, but he was not sure that he did, call National. The wheel covers were not replaced.

A week or ten days later, the claims supervisor, perceiving no action on Williams' claim, authorized the issuance of a draft to Williams in the sum of $341.17. The amount of the draft, after adjustment for the $90 deductible, was, because of the claims supervisor's error, $17 more than was certified in the affidavit of National Wheelcover Service, Inc.'s president to be National's discounted price list, a copy of which was attached, for four wire wheel covers, with locks, for a 1977 Cadillac Seville.

The draft, dated 17 February 1984, was mailed to the Lubbock insurance agent for delivery to Williams. On 23 March 1984, the agent mailed the check to Williams at the address where he had lived and had received the 2 February 1984 communication; however, Williams had moved before that date, and later received the check when it was remailed on 26 March 1984 to his current address. By then, Williams had retained a lawyer and did not negotiate the check.

After the insurance company's motion for summary judgment, contested by Williams, was denied, the trial court took evidence. The evidence was taken from Williams, his attorney, and the claims supervisor.

Williams was allowed to testify upon the overruling of a hearsay objection that, by "checking around" he found the value of the wheel covers in Lubbock County to be "$800.00 and something." He offered the two estimates he had secured for the purposes of showing their submission in compliance with the policy requirements and as the facts upon which he based his own opinion of the value of the wheel covers. They were admitted into evidence over the objection that they were hearsay. Later in his testimony, Williams was asked and replied as follows:

Q. Did anybody, in fact, ever replace your wheel covers for you?

A. No, sir.

Q. Okay. And what is the actual cash value of those wheel covers, in your opinion?

\* \* \* \* \* \*

A. They run about eight thirty plus, you know, taxes and stuff.

Thereafter, Williams was not asked the basis of the opinion.

The claims supervisor testified that the stolen property could be replaced with other of like kind or quality for the amount of $413.28, thereby leaving due under the policy, after the $90 deductible, the sum of $323.28, which is less than the draft Williams received. The replacement cost was referenced to National's price list which, with its accompanying affidavit, were introduced into evidence over the objection that it was hearsay.

The court rendered judgment decreeing that Williams recover from the insurance company the sum of $1,230.58, which included $830.58 as the value of the wheel covers and $400 as attorney's fees. At the request of the insurance company, the court made and filed findings of fact and conclusions of law.

The insurance company attacks the judgment with thirteen points of error. Initially, we will consider the company's second-point contention that the court erred in admitting the two estimates Williams secured over its hearsay objection.

■ The estimates, made out of court by third parties and offered to prove the facts upon which Williams based his opinion of value, were hearsay, Rule 801(d), Texas Rules of Evidence, and were inadmissible for that purpose. Tex.R.Evid. 802. However, the estimates were also offered to show Williams' compliance with the insurance policy requirements, *i.e.,* to furnish proof of loss. Thus, the estimates had relevancy apart from the truth of the cost of the wheel covers contained therein, and their admission for this purpose was not barred by the hearsay rule. Tex.R.Evid. 801(d); *Fire Ass'n of Philadelphia v.*

*McNerney,* 54 S.W. 1053, 1053–54 (Tex.Civ. App.—1900, no writ); 1A R. Ray, Texas Law of Evidence Civil and Criminal § 781 (Texas Practice 3d ed. 1980). Then, the presumption obtains that the court did not accept the estimates as proof of the cash value of the stolen property, but only considered them as evidence that Williams furnished the insurance company with proof of loss. *Victory v. State,* 138 Tex. 285, 158 S.W.2d 760, 765 (1942). Consequently, the second point of error must be overruled.

Given the inadmissibility of the estimates to prove the value of the stolen wheel covers, the insurance company presents, with its first and third through seventh points, the central contention of the lack of evidential support to establish $830.58 as the actual cash value of the stolen wheel covers. To this end, the company first faults the court for admitting Williams' testimony that by "checking around" he found the value of the wheel covers in *Lubbock County* to be "$800.00 and something," because it was inadmissible hearsay relating to statements made to him by others not testifying at the trial. Then, the company submits, there is no evidence, or insufficient evidence, to support the court's third factual finding that the actual cash value of the property stolen was $830.58, and the legal conclusions, and the judgment for that amount.

■ Even accepting that Williams' testimony of value derived from "checking around," when considered in isolation, constituted inadmissible hearsay, there still remains Williams' opinion, quoted earlier, of "about eight thirty plus" as the actual cash value of his wheel covers. The opinion of actual cash value of the property stolen, a measure of the insurance company's liability under the policy, is equivalent to, and synonymous with, the market value of the property stolen. *McInnis v. Brown County Water Improvement Dist. No. 1,* 41 S.W.2d 741, 746 (Tex.Civ.App.—Austin 1931, writ ref'd).

■ It is, of course, settled that an owner of property can prove its market value by his opinion testimony, even though he may not be qualified to testify about the value of like property belonging to another. Moreover, even if the owner is not asked if he is familiar with the market value of his property, his opinion testimony of value is sufficient if it shows that it refers to market value. *Porras v. Craig,* 675 S.W.2d 503, 504–05 (Tex.1984).

■ The quoted opinion testimony of Williams shows that it clearly refers to the cash value of his stolen wheel covers and, thus, is sufficient proof thereof. *Id.* The fact that his opinion may be derived from information furnished by others does not deprive the testimony of probative value, *Slaughter v. Abilene State School,* 561 S.W.2d 789, 791 (Tex.1977); *Purolator Courier Corp. v. Railroad Commission,* 548 S.W.2d 486, 490 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.); it merely bears upon the weight of the testimony. *Gray v. Bird,* 380 S.W.2d 908, 913 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.)

■ Although the insurance company presents in its brief a forceful argument on the weight, or more properly the lack of weight, to be given Williams' testimony, that was a matter for the trial court. Hence, in considering the "no evidence" and "insufficient evidence" challenges to the value placed on the stolen wheel covers by the trial court under the standards of review reiterated in *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965), and its progeny, we find there is some evidence of probative value to support the court's award of $830.58, and we cannot say that the evidence is factually insufficient to support it. Points of error one and three through seven are overruled.

With its eighth and ninth points, the insurance company asserts there is, respectively, no evidence and insufficient evidence to support the court's sixth factual finding that "[p]ayment was refused by [the insurance company]." This results, the company argues, because it did not breach the policy. There was no breach, the argument continues, for two reasons. First, the claims adjuster testified that the stolen property could be replaced for $413.28, from which the $90 deductible is to

be subtracted, making the amount due under the policy $323.28, a lesser sum than the $341.17 draft Williams admittedly received. Second, Williams was informed how to acquire replacement wheel covers from National. The reasons will be regarded in inverse order.

As previously noticed, the company could discharge its liability under the policy either by paying the amount necessary to replace the stolen property with other of like kind and quality, or by replacing it. It follows that in making its expressed finding, the trial court was entitled to conclude that the company's liability was not satisfied by merely advising Williams where and how he could acquire replacement of the stolen property.

With respect to the claims supervisor's testimony of cost of replacement at National, he actually testified that the amount of $413.28 was the price indicated on National's price list attached to the affidavit, which was admitted over the objection that it was hearsay. The price list was a business record not excluded by the hearsay rule. Tex.R.Evid. 803(6). And the record, being accompanied by the properly phrased and executed affidavit, is deemed genuine for the purpose of admissibility. Tex.R.Evid. 902(10). Thus, the admissibility of the price list was not barred by the hearsay objection and, upon admission into evidence, its worth or weight was a matter for the trial court.

However, the price list was but a part of the evidence for the court's consideration. In reaching its ultimate finding, the court had the right to consider all facts and circumstances in evidence and to indulge reasonable inferences therefrom. *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 290 (1951). In this connection, the court could consider the evidence that Williams concededly had complied with the terms of the policy, and could reasonably infer that he was entitled to payment or actual replacement at least by the 2 February 1984 date of the communication advising him where and how to acquire replacement wheel covers. Also from the evidence, the court could consider that al-though the 17 February 1984 draft may have been prepared before Williams was advised to, and then did retain, his attorney, the draft was not tendered to Williams until almost a month after the attorney's demand letter was written. By choosing to send the draft to the local insurance agent for delivery to Williams, the insurance company constituted the agent its special agent for that purpose, thereby becoming bound by the late tender. *Accord, Lucas v. Whiteley*, 550 S.W.2d 767, 769 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.). Moreover, the court could consider that the extent of liability contended for by the insurance company was the price for which National would furnish replacement wheel covers in Fort Worth, whereas Williams testified to the actual cash value of the wheel covers in Lubbock, the place where his automobile was located and where the wheel covers were stolen.

On this record, then, there is some evidence of probative value to support the court's finding that the insurance company refused payment and, considering all of the evidence, we cannot say that it is factually insufficient to support the finding. Points eight and nine are overruled.

The insurance company utilizes its points of error ten through twelve to attack the court's award of attorney's fees. The points are its contentions that there is no evidence and insufficient evidence to support the court's seventh finding of a necessity for Williams to procure the services of an attorney, and that the evidence is insufficient to support the attorney's fees awarded since there is no valid claim underlying the award.

The predicate for the attack is that if Williams is unable to establish an entitlement to a greater amount than the $341.17 tendered to him before he filed his action, as the insurance company contended by its prior points he was unable to do, then he does not have a valid claim for attorney's fees. But, because we have held the award of $830.58 is invulnerable to the attacks made on it to this point, the predicate for the points fails, and we will not disturb the

award of attorney's fees. *See Texas Farmers Ins. Co. v. Hernandez*, 649 S.W.2d 121, 124 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). Points ten through twelve are overruled.

By its thirteenth point, the insurance company contends, and Williams judicially concedes, that the court erred in not allowing credit in the judgment for the policy deductible of $90. In addition, Williams has filed a remittitur of $90. *See* Tex.R. App.Proc. 85(a). Conformably, we sustain the thirteenth point, and the amount of the judgment will be reduced by $90.

Accordingly, the judgment is reformed to eliminate $90 from the $830.58 amount awarded under the insurance policy and, as reformed, the judgment is affirmed.