**Barbara Gene MYERS, Petitioner,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, and Does 1 through 10, Inclusive, Respondents.**

No. CV 96–8405 LGB (Ex).

United States District Court, C.D. California.

April 28, 1997.

ORDER DENYING PETITION TO ENFORCE APPRAISAL AWARD

BAIRD, District Judge.

### I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 78 and Central District Local Rule 7.11,

the Court dispensed with oral argument on Petitioner's Petition to Enforce Appraisal Award and took it under submission. Having reviewed all pertinent papers on file and for the reasons set forth below, the Court hereby DENIES the Petition.

## II. PROCEDURAL BACKGROUND

The instant action arises out of the January 17, 1994 Northridge earthquake in which the home of Petitioner Barbara Gene Myers' ("Myers") sustained severe damage. Myers had purchased a policy of insurance ("Policy") on her home from Respondent Allstate Insurance Company ("Allstate") for the period May 13, 1993 through May 14, 1994. (*See* Pet. to Enforce Appraisal Award ("Pet.") Ex. A (portions of the Policy).)

In March 1996, Myers submitted a sworn proof of loss as required by the Policy, but the parties were unable to reach agreement upon the amount of the loss. (*Id.* ¶ 1.) The issue of value was submitted to appraisal as required by the policy. (*Id.*) An award in the sum of $340,942.82 was filed with Allstate on September 6, 1996.

On October 25, 1996, Myers filed a Petition to Enforce Appraisal Award in the Superior Court of California, County of Los Angeles. Allstate filed a Response to the Petition on December 2, 1996.

On November 14, 1996, counsel for Myers executed a Notice of Hearing to Confirm Appraisal Award which included the Declaration of Myers in Support of the Petition and a Memorandum of Points and Authorities in Support of the Petition.[1]

On December 3, 1996, Allstate removed the instant case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and pursuant to 28 U.S.C. § 1441(a).

Allstate filed an Opposition to the Petition to Enforce Appraisal Award on January 15, 1997. Myers did not file a Reply to Allstate's Opposition.

## III. FACTUAL BACKGROUND

Myers alleges the following facts in her Petition to Enforce Appraisal Award and supporting documents.

Myers owns a home located at 12114 Maxwellton Road in Studio City, California. (Pet.¶ 2.) On January 17, 1994, Myers' home was severely damaged by the Northridge Earthquake. (*Id.* ¶ 7.) At the time of the earthquake, Myers' home was covered by the Policy. (*Id.* ¶ 1.) The parties agreed that the home is covered for the replacement cost of the damage sustained in the earthquake. (*Id.*)

At some point after the earthquake, Myers and Allstate agreed upon most of the items in Myers' home that were damaged but the parties never reached complete agreement. (Myers Decl. in Support of Pet. to Confirm Appraisal Award ("Myers Decl.") ¶ 5.) In January 1995, Myers submitted a proof of loss to Allstate. (*Id.* ¶ 1.)

Myers did not receive a response from Allstate and in October 1995, Myers inquired as to the option Allstate had decided to pursue under the terms of the Policy. (*Id.* ¶ 5.) Again Myers received no response. (*Id.* ¶ 5.)

In March 1996, Myers demanded an appraisal of her loss as set forth in the Policy. (*Id.* ¶ 6.) Myers selected Mr. Larry Walter as her appraiser. (*Id.*) Allstate selected Mr. John Parkhurst. (*Id.*) Both Mr. Walter and Mr. Parkhurst selected Mr. Gerald Kurland with JAMS as their umpire. (*Id.*)

In late August 1996, the two appraisers and the umpire agreed upon the amount of Myers' loss and developed an appraisal award ("Award"). (*Id.*) Mr. Walter signed the award on August 30, 1996; Mr. Parkhurst signed the award on September 6, 1996; and Mr. Kurland signed the award on September 11, 1996. (*Id.*) The amount of the award was $340,942.82. (Pet.Ex. B (Award signed by all three appraisers).)

On September 17, 1996, Myers sent a letter to Allstate requesting a single lump sum

---

1. These documents were appended to Allstate's Notice of Removal and provide useful background information. However, these documents do not have "filed" stamps on their face pages, rendering them all unconfirmed. As Allstate has not filed any objection to these documents, the Court will treat them as if they were properly submitted.

payment of $365,720.82.[2] (*Id.* Ex. B (9/18/96 letter of Allstate referring to Myers' lump sum demand).) In response, Allstate sent Myers a letter indicating that pursuant to its interpretation of the agreement, it would issue a check for $94,000—the actual cash value of the loss[3]—and afterward, payment would be made based on the amount actually and necessarily spent to repair the damaged house. (*Id.* ¶ 1; Ex. B (9/17/96 letter of Allstate).) Moreover, Allstate notified Myers that the amount owed was really $331,542.82—the amount of the appraisal award less a deductible of $9,400. (*Id.* Ex. B (9/17/96 letter of Allstate).) Accordingly, Allstate issued a check to Myers in the amount of $94,000 on October 7, 1996. (*Id.* Ex. B (photocopy of disbursement).) The instant Petition was filed on October 25, 1996 seeking judgment and an award in the amount of the appraisal award.

## IV. ANALYSIS

In support of her argument, Myers asserts both a statutory argument and a contractual argument. The statutory argument is essentially that the Policy's replacement cost provisions are both unreasonable and violative of California Insurance Code sections 2070 and 2071. The contractual argument is that it would be impractical to read the Policy in any manner which would deny Myers payment of the Award within 60 days.

### A. MYERS' STATUTORY ARGUMENT

#### 1. Legal Standards

##### a. California Statutory Authority

California Code of Civil Procedure § 1285 provides that "[a]ny party to an arbitration in which an award has been made may petition the court to confirm, correct, or vacate the award." Cal.Civ.Proc.Code § 1285 (West1982). Section 1287.4 provides that

[i]f an award is confirmed, judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action; and it may be enforced like any other judgment of the court in which it is entered.

*Id.* § 1287.4.

Under California law, fire insurance is defined as a class of insurance which includes losses resulting from other perils such as earthquakes. *See* Cal.Ins.Code § 102 (West 1993) ("Fire insurance includes: (a) Insurance against loss by *** earthquake.").

California Insurance Code § 2071 sets out California's standard form of fire insurance and provides in pertinent part that

[t]he amount of loss for which this company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this company and ascertainment of the loss is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided.

*Id.* § 2071.[4]

Section 2071 also provides for the manner in which an appraisal shall be conducted. *See id.* § 2071. The appraisal provision in the Policy at issue here tracks the appraisal language of section 2071. (*See* Pet.Ex. A.)

Pursuant to section 2070, insurers may not deviate from the standard form enunciated in section 2071 unless such deviation, "when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in the standard form ...." Cal.Ins.Code § 2070.

#### b. Replacement Cost Insurance Contracts

Despite the express language of California Insurance Code 2071 which provides that

the house immediately prior to the earthquake and the value of the house immediately after the earthquake.

---

**2.** There is nothing in the record indicating how Myers arrived at this monetary figure.

**3.** Nowhere in the record do the parties define "actual cash value of the loss." The portion of the Policy submitted by Myers in her Petition does not include the definitional page. It appears, however, that actual cash value of the loss is, in effect, the difference between the value of

**4.** While section 2071 provides the standard form "fire" insurance policy, both parties proceed under the assumption that the statute applies equally to earthquake insurance policies.

payment shall be made within 60 days of ascertainment of loss, the Ninth Circuit has recently held that certain replacement cost contracts, wherein the insurer agrees to reimburse the insured for repairs and replacement only after such expenditures are made, are authorized by law and do not violate the dictates of section 2071. *See Maryland Cas. Co. v. Knight,* 96 F.3d 1284, 1293 (9th Cir. 1996). In *Knight,* the court upheld a replacement cost insurance policy because the terms were actually more favorable to the insured than the 60-day period in the section 2071 standard form contract and because the insured received the actual cash value of the loss to his home within thirty days of the damage. *See id.*

### 2. Application

Myers' statutory argument is that California Insurance Code section 2071 expressly requires Allstate to pay Myers the Award in full within 60 days of its issuance. *See* Cal. Ins.Code § 2071. As the Award was finalized on September 11, 1996, Myers argues, Allstate was required to pay the full amount of the Award within 60 days of that date. Moreover, Myers argues, under section 2070, the language of paragraph 6 of the Policy, which uses the word "settle" rather than the word "pay," cannot impose a more restrictive result on the insured than would flow from the language of the standard form policy provided for in section 2071. (Memo. of P & As at 6.)

However, as Allstate properly notes—and Myers seems to ignore—the policy at issue is a replacement cost contract. The replacement costs clauses of the Policy provide:

### How We Pay For a Loss

### Building Structures

Payment for covered loss to building structures insured under the Dwelling Protection coverage will be by one of the following methods:

a) Replacement Cost. This means there will not be a deduction for depreciation. Payment will not exceed the smallest of the following amounts:

1) the replacement cost of that part of the building structure damaged for equivalent construction and use on the same premises;

2) the amount actually and necessarily spent to repair or replace the damaged building structure; or

3) the limit of liability applicable to the building structure.

*We will not pay more than the actual cash value of the damaged building structure until the repair or replacement is completed.*

b) Actual Cash Value. This means that there may be a deduction for depreciation.

If you do not repair or replace the damaged building structure, payment will be on an actual cash value basis not to exceed the limit of liability shown on the declarations page for Coverage A— Dwelling Protection. You may make claim for any additional payment on a replacement cost basis if you repair or replace the damaged building structure within 180 days of the actual cash value payment. (Pet.Ex. A (portions of the Policy) (emphasis added).)

The Ninth Circuit decision in *Maryland Casualty* involved a similar fire insurance policy which provided that replacement costs would not be paid by the insurer unless "the lost or damaged property is actually repaired or replaced." 96 F.3d at 1293. The policy also provided that the insured could receive the actual cash value of the loss within thirty days after the appraisal award was issued and after the insured complied with all policy terms. *Id.* at 1292.

The plaintiff in *Maryland Casualty* challenged the fire insurance policy at issue on the ground that it violated the requirements of California Insurance Code sections 2070 and 2071. The plaintiff further contended that "it is unreasonable to require an insured to pay the costs of replacing an insured building without the benefit of any insurance money to pay for the construction." *Id.*

In upholding the policy, the Ninth Circuit held that because the policy allowed for payment of the actual cash value of the loss within thirty days of an appraisal award be-

ing issued, in addition to the option of recovering replacement cost in excess of actual cash value upon proof of repair or replacement by the insured, the policy was actually *more* favorable to the insured than section 2071's standard form policy. *See id.* at 1293. The court found persuasive the fact that the plaintiff received the actual cash value of the loss within thirty days of his submitting a statement of loss. *See id.* Such payment, the court suggested, could be used to begin the process of repair or replacement, at which point the insured could submit claims for expenditures that went above the actual cash value of the loss. *See id.*

■ The policy in the instant case is almost identical in substance to the policy at issue in *Maryland Casualty*. The Policy provides for payment of the actual cash value of the loss in addition to the option of making a claim for additional payment on a replacement cost basis, provided such repairs are made within 180 days.[5] The Ninth Circuit held that such provisions do not violate California Insurance Code sections 2070 and 2071. *See id.* Moreover, Myers in fact received the actual cash value of the loss less than a month after the award was signed by the umpire and less than three weeks after she sent her demand letter to Allstate. Under the reasoning of *Maryland Casualty*, Myers should be estopped from arguing that the terms of the Policy are less favorable to her than those contained in the standard form. *See id.* at 1292 (applying estoppel theory and rejecting contention that it is unreasonable to force insured to make expenditures first and then file claims later). The $94,000.00 payment by Allstate can be used to begin repairs or replacements, at which point Myers may then make claims for additional expenditures.

This Court finds that in light of the Ninth Circuit's decision in *Maryland Casualty*, Myers' statutory argument must fail.

**5.** In *Maryland Casualty*, the court placed some weight on the fact that the actual cash value was to be paid within 30 days of the appraisal award in finding that the policy at issue was more favorable to the insured than section 2071's standard form policy. In the case at bar, the record

## B. MYERS' CONTRACTUAL ARGUMENTS

### 1. Legal Standard

■ "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Contracts, including insurance policies, are to be interpreted "as a whole, with each clause lending meaning to the others." *Titan Corp. v. Aetna Cas. & Sur. Co.,* 22 Cal.App.4th 457, 473–74, 27 Cal.Rptr.2d 476 (1994). Courts should "interpret contractual language in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory." *Id.* at 474, 27 Cal.Rptr.2d 476.

### 2. Application

Myers' contractual argument is that there is no way to interpret the Policy other than compelling Allstate to pay Myers the full amount of the Award. In support of her contractual argument, Myers relies on paragraphs 4 and 6. Paragraph 4 provides in pertinent part:

**Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed, or stolen property.

**We** will notify you of the option or options **we** intend to exercise within 30 days after **we** receive **your** signed, sworn proof of loss.

(Pet. Ex. A (portions of the Policy) (emphasis in original).)

Paragraph 6 of the Policy provides:

does not indicate the deadline for Allstate's payment of the actual cash value of the loss. However, Myers has not plead any facts to support her argument that the Policy is less favorable to her than the standard form policy.

**Our Settlement of Loss**

We will settle any covered loss with you. We will settle with you unless another payee is named in the policy. We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between you and us, an appraisal award or a court judgment.

(Pet.Ex.A.)

■ Myers' argument with respect to paragraph 4 is that Allstate's failure to notify Myers of its selected option within 30 days after receiving Myers' proof of loss amounted to a waiver of the option to rebuild and a selection of the option to pay. (Mem. P & As in Support of Pet.) This argument is unfounded.

To begin with, there is nothing in the language of the Policy to suggest that a failure to elect one of the two options in paragraph 4 would automatically amount to an election of the second option in paragraph 4. Myers' argument is essentially that if the insurer does not select an option, then the insured may select the option. There is no basis for this reasoning and Myers offers no case law to support the position.

Moreover, the terms of an insurance policy are to be interpreted as a whole, "with each clause lending meaning to the others." *Titan Corp.*, 22 Cal.App.4th at 473–74, 27 Cal. Rptr.2d 476. Myers would have the Court read paragraph 4 to the exclusion of the replacement cost provisions in the Policy which expressly cover the damages claimed by Myers. This ignores the rules governing the interpretation of contracts.

Finally, the policy at issue in *Maryland Casualty* contained a similar 30–day payment provision in addition to replacement cost provisions. In addressing the plaintiff's argument that the two terms were in conflict, thus rendering the policy ambiguous, the Ninth Circuit held that there was no such conflict. *See Maryland Casualty*, 96 F.3d at 1292. The court reasoned that the 30–day payment provision must be read in conjunction with the replacement cost provisions. Thus, the requirement to pay within 30 days could not be triggered until "the lost or damaged property is actually repaired and replaced." *Id.* (quoting the fire insurance policy at issue). In the instant case, paragraph 4 must be read in conjunction with the replacement cost provisions. Myers must comply with the replacement cost provisions before Allstate has any duty to pay for costs which go beyond the actual cash value of the loss.

With respect to paragraph 6, Myers argues that the only logical interpretation of the word "settle" is that it means "pay." (Memo. of P & As at 6.) Myers argues that if it does not mean "pay," "the policy is a nullity" and "Allstate would *never* have to pay." (*Id.* (emphasis in original).) Again, Myers' argument fails to account for the replacement cost provisions which allow for payment only after the insured first makes repairs or replacements and then submits proof of such repairs or replacements.

**V. CONCLUSION**

Based on the foregoing, the Court hereby DENIES Myers' Petition to Enforce the Appraisal Award.

**IT IS SO ORDERED.**