Sarjit **GHOMAN** d/b/a **Arlington Howard Johnson Hotel, on behalf of himself and others similarly situated, Plaintiff,**

v.

**NEW HAMPSHIRE INSURANCE COMPANY, et al., Defendants.**

No. 3–01–CV–0092–BD.

United States District Court, N.D. Texas, Dallas Division.

Sept. 6, 2001.

John L. Hubble, Hubble & Pistorius, Dallas, TX, for Plaintiff.

Harrison H. Yoss, Jo Allison Stasney, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, TX, Gary Crapster, Strasburger & Price, L.L.P., Dallas, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Plaintiff Sarjit Ghoman and Defendants New Hampshire Insurance Company ("NHIC") and AIG Claims Services, Inc. ("AIG") have filed cross-motions for summary judgment. For the reasons stated herein, plaintiff's motion is granted and defendants' motion is denied.

### I.

Plaintiff owns and operates a Howard Johnson Hotel in Arlington, Texas.[1] (Plf. First Am. Class Action Compl. ¶ 1). On December 9, 1996, plaintiff purchased a $6 million commercial property insurance policy from NHIC. (Id.). The policy insures the hotel "against all risks of physical loss." (Id.). While this policy was in effect, plaintiff's hotel was badly damaged by wind and hail. (Id. ¶ 2). AIG, acting on behalf of NHIC, offered $15,000 to settle the claim. (Id. ¶ 4). Plaintiff rejected this offer and demanded an appraisal as provided by the policy. The appraisal award valued the replacement cost at $299,907 and the actual cash value of the loss at $262,353. (Id.). In response to this appraisal, NHIC tendered payment to plaintiff in the amount of $190,414. This sum represents the cost of replacement as determined by the umpire, less depreciation, contractor's overhead and profit, sales tax on building materials, and a $1,000 deductible. (Id. ¶¶ 5–6). Plaintiff contends that, with the exception of depreciation and his deductible, the items sums withheld by NHIC are recoverable under the policy. (Id. ¶¶ 9–11).

Plaintiff now brings a class action suit against NHIC for breach of contract, breach of the duty of good faith and fair dealing, and violations of Article 21.55 of the Texas Insurance Code.[2] The complaint

---

1. The hotel is now known as Best Hotel & Suites. (Plf. First Am. Class Action Compl. ¶ 1).

2. Plaintiff, a Texas citizen, originally filed suit in Texas state court against: (1) NHIC, a Pennsylvania corporation headquartered in New York; (2) AIG, a New York corporation headquartered in New York; and (3) Higginbotham & Associates, Inc., a Texas corporation headquartered in Texas. Defendants removed the case to federal court alleging that Higginbotham & Associates was fraudulently joined to defeat diversity jurisdiction. Plaintiff filed a motion to remand, which was denied. See Ghoman v. New Hampshire Insurance Co., 2001 WL 376460 (N.D.Tex. Apr.11, 2001). Thereafter, plaintiff voluntari-

also contains non-class claims against NHIC and AIG for violations of Article 21.21 of the Texas Insurance Code. The case is before the court on cross-motions for summary judgment. The parties have briefed the issues and the motions are ripe for determination.

## II.

■ Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir.), *cert. denied*, 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matter of Gleasman*, 933 F.2d 1277, 1281 (5th Cir.1991). Cases involving the interpretation of an insurance policy are particularly appropriate for summary disposition. *See Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir.1994); *SnyderGeneral Corp. v. Great American Insurance Co.*, 928 F.Supp. 674, 677 (N.D.Tex.1996) (Kaplan, M.J.), *aff'd*, 133 F.3d 373 (5th Cir. 1998).

■ When a case is presented to the court by way of cross-motions for summary judgment, each party has the burden of producing evidence to support its motion. *Dutmer v. City of San Antonio*, 937 F.Supp. 587, 589–90 (W.D.Tex.1996). The movant has the initial burden of showing the absence of a genuine fact issue. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir.1995); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All the evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir.1993). However, conclusory statements, hearsay, and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Topalian*, 954 F.2d at 1131.

## III.

NHIC tendered $190,414 to plaintiff in full satisfaction of his property damage claim. This sum represents the replacement cost of $299,907 as found by the umpire, less: (1) $37,554 in depreciation; (2) $48,083 in contractor's overhead and profit; (3) $22,856 in sales tax; and (4) a $1,000 deductible. (Def.App. at 88). Plaintiff seeks the actual cash value of the loss, or $262,353, which he calculates to be the replacement cost less depreciation. NHIC argues that plaintiff is entitled to no further payments under the policy because he made a replacement cost claim and spent only $139,608.78 to repair his property.

### A.

The NHIC policy provides that the insurance company "will determine the value of Covered Property in the event of loss or damage ... [a]t actual cash value as of the

ly dismissed his claims against Higginbotham & Associates. *See* ORDER, 4/10/01.

time of loss or damage ..." (*Id.* at 68, ¶ C(7)(a)). However, a different policy provision applies where the insured has also purchased optional replacement cost coverage.[3] In such cases:

> Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation of this Coverage Form.
>
>  \*  \*  \*  \*  \*  \*
>
> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

(*Id.* at 70, ¶ G(3)(a) & (c)).

This language is clear and unambiguous. It allows the insured to *either* make a claim for replacement costs, up to the policy limits, *or* actual cash value supplemented by additional replacement cost coverage. By this lawsuit, plaintiff seeks $48,083 in contractor's overhead and profit and $22,856 in sales tax which he contends was wrongfully deducted from his actual cash value claim. NHIC counters with two arguments: (1) plaintiff has already been paid more than he spent to repair his property; and (2) plaintiff made a replacement cost claim, not an actual cash value claim. The Court will address each argument in turn.

### 1.

By using excess and surplus materials and having some of the repairs done by on-site maintenance personnel, plaintiff spent only $139,608.78 to repair his property. (Plf.App.Exh.A, ¶ 2). NHIC has already paid plaintiff $190,414, or $50,805.22

more than the actual cost of repairs. As a result, the insurance company maintains that plaintiff is entitled to no further payments under the following policy provision:

> We will not pay more for loss or damage *on a replacement cost basis* than the least of:
>
> (1) The Limit of Insurance applicable to the lost or damaged property;
>
> (2) The cost to replace, on the same premises, the lost or damaged property with other property:
>
>> (a) Of comparable material and quality; and
>>
>> (b) Used for the same purpose; or
>
> (3) *The amount you actually spend that is necessary to repair or replace the lost or damaged property.*

(Def.App. at 70, ¶ G(3)(e)) (emphases added).

■ Obviously, an insured cannot recover repair or replacement costs unless and until he actually repairs or replaces the insured structure. *See, e.g. Kolls v. Aetna Casualty and Surety Co.*, 378 F.Supp. 392, 395 (S.D.Iowa), *aff'd,* 503 F.2d 569 (8th Cir.1974); *Huggins v. Hanover Insurance Co.*, 423 So.2d 147, 150 (Ala. 1982); *Higgins v. Insurance Co. of North America*, 256 Or. 151, 469 P.2d 766, 772 (1970). Nor can an insured recover repair or replacement costs in excess of what he actually spends on repairs or replacement. *Kolls*, 378 F.Supp. at 397; *Huggins*, 423 So.2d at 150; *Higgins*, 469 P.2d at 774. However, these well-settled principles of insurance law are only applicable where the insured seeks replacement costs. The court must therefore determine whether plaintiff made a replacement cost claim or an actual cash value claim.

---

**3.** It is undisputed that plaintiff has replacement cost coverage. (Def.App. at 48).

### 2.

■ As noted above, the policy allows plaintiff to either make a claim for replacement costs or the actual cash value of the loss supplemented by additional replacement cost coverage. (Def.App. at 70, ¶ G(3)(a) & (c)). Robert Long, the adjuster who handled this claim, states that "[p]laintiff sought the cost to repair or replace the damage as provided under the terms of the policy." (*Id.* at 11, ¶ 3). Relying exclusively on this evidence, NHIC argues plaintiff made a replacement cost claim.

■ This conclusion is neither justified by Long's affidavit nor supported by the summary judgment record. The mere fact that plaintiff may have requested funds to repair or replace the damage to his property is not inconsistent with making an actual cash value claim. Where an insured purchases optional replacement cost coverage, the policy provides:

> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. *In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.*

(*Id.* at 70, ¶ G(3)(a) & (c)) (emphasis added). The purpose of this two-step process is to enable the insured to obtain funds "to begin the process of repair or replacement, at which point [the insured] could submit claims for expenditures that went above the actual cash value of the loss." *Fraley v. Allstate Insurance Co.,* 97 Cal.Rptr.2d 386, 390, 81 Cal.App.4th 1282, 1290 (2000),

*quoting Myers v. Allstate Insurance Co.,* 989 F.Supp. 1250, 1254 (C.D.Cal.1997). Thus, an insured who initially seeks replacement costs may still file an actual cash value claim.

The summary judgment evidence strongly suggests that plaintiff invoked this two-step process. First, the appraisal determined both the replacement cost value as well as the actual cash value of the loss. (Def.App. at 86; *see also id.* at 87, 88). There would be no reason for the umpire to make an actual cash value award if plaintiff were requesting only replacement costs. Similarly, the claim form submitted by plaintiff is consistent with an actual cash value claim. This form indicates that plaintiff assessed the actual cash value of his loss at $190,414 and sought $108,493 in "supplemental" proceeds. (Plf.Reply, Exh. C).[4] Most significantly, the $190,414 check tendered to plaintiff contains the notation "ACV PAYMENT." (*Id.* Exh. B). In a letter written just prior to issuing this check, NHIC explained:

> Under the provisions of the insurance contact, New Hampshire would be entitled to withhold depreciation, overhead and profit, and sales tax in making the *actual cash value* payment to your client. Deducting depreciation of $37,554, overhead and profit of $48,083, and sales tax of $22,856, would result in an *actual cash value* payment to your client of $191,414. New Hampshire will be issuing payment for that amount, less the deductible of $1,000, to your client. This will result in an *initial payment* to your client of $190,414.

(Def.App. at 88) (emphases added). The letter goes on to state that plaintiff could file a claim "for the amount withheld once

---

4. This $108,493 figure represents $37,554 in depreciation, $48,083 in contractor's overhead and profit, and $22,856 in sales tax. (Plf.Reply, Exh. C). Plaintiff now concedes

that depreciation is properly excluded from actual cash value. (Plf. Resp. & Cross–MSJ at 2, ¶ 3). Therefore, he seeks only $70,939 withheld from his $190,414 payment.

[he] presents sufficient documentation which is able to be verified as to the amount actually spent ... that is necessary to repair the damage to the property." (*Id.*).

This evidence conclusively establishes that plaintiff filed a claim for the actual cash value of his loss, supplemented by additional replacement cost coverage, rather than a replacement cost claim. The court must now decide whether contractor's overhead and profit and sales tax were properly deducted from actual cash value.

### B.

■■■ "Actual cash value" is not defined by the policy. Under Texas law, the term "actual cash value" is synonymous with "fair market value." *See Great Texas County Mutual Insurance Co. v. Lewis,* 979 S.W.2d 72, 74 (Tex.App.—Austin 1998, no pet.); *Guaranty County Mutual Insurance Co. v. Williams,* 732 S.W.2d 57, 60 (Tex.App.—Amarillo 1987, no writ); *United States Fire Insurance Co. v. Stricklin,* 556 S.W.2d 575, 582 (Tex.Civ.App.—Dallas 1977), *writ ref'd n.r.e.,* 565 S.W.2d 43 (Tex. 1978). "Fair market value" is the price a willing purchaser who is under no obligation to buy would pay to a willing owner who is under no obligation to sell. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (2001); *Atterbury v. Brison,* 871 S.W.2d 824, 828 (Tex.App.—Texarkana 1994, writ denied). This price can be quantified in one of three ways: (1) comparable sales; (2) the income capitalization approach; or (3) the cost of repair or replacement less depreciation. *See Religious of the Sacred Heart of Texas v. City of Houston,* 836 S.W.2d 606, 615–16 (Tex.1992), *citing* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* at 62 (9th ed.1987).[5]

■■■ The court concludes that "actual cash value" under the policy means repair or replacement costs less depreciation. "[R]epair or replacement costs include any cost that an insured is reasonably likely to incur in repairing or replacing a covered loss." *Salesin v. State Farm Fire & Casualty Co.,* 229 Mich.App. 346, 581 N.W.2d 781, 790 (1998), *appeal denied,* 459 Mich. 934, 615 N.W.2d 738 (1998), *quoting Gilderman v. State Farm Insurance Co.,* 437 Pa.Super. 217, 649 A.2d 941, 945 (1994), *appeal denied,* 541 Pa. 626, 661 A.2d 874 (1995).[6] Contractor's overhead and profit and sales tax clearly fit this definition. These amounts should be included in the actual cash value award.

■■■ NHIC points out that plaintiff did not actually incur some of these costs because he completed some of the repairs himself. While this may be true, it is legally irrelevant. *See Gilderman,* 649 A.2d at 945 ("All repair and replacement costs are, in theory, 'contingent' prior to being incurred."). Plaintiff contracted for the actual cash value of his loss. His recovery is not tied to the repair or re-

---

**5.** Not only do Texas courts recognize replacement cost less depreciation as an accepted method of calculating actual cash value, but the appraiser in this case determined plaintiff's loss using this method. (Def.App. at 86–87). *See also* Texas Dep't of Insurance, Commissioner's Bulletin No. B–0045–98 (June 12, 1998) ("The value of contractor's overhead and profit, as well as sales tax on building materials, has been included in the limit of liability for which the insured has paid premium.").

**6.** NHIC attempts to distinguish *Salesin* and the other authorities cited by plaintiff by pointing out that the insurance policies in those cases limit recovery to actual cash value until repair or replacement is completed. (Def. Reply & Resp. to Plf. Cross–MSJ at 10–13). This is a curious argument, since the policy issued to plaintiff contains a similar provision. (Def.App. at 70, ¶ G(3)(d)(1)) (providing that replacement costs will not be paid "[u]ntil the lost or damaged property is actually repaired or replaced").

placement of his property. As the Alabama Supreme Court observed:

> [I]t is clear that the insured's right to claim actual cash value is unaffected by his choice to rebuild his house. To be sure, what is contemplated is that, ordinarily, actual cash value will be less than replacement cost; thus, the insurer will first pay the lesser amount; and then, upon completion within 180 days after the loss, will pay the difference between actual cash value and replacement cost, not to exceed the policy limits.
>
> *          *          *          *          *          *
>
> Replacement cost is a relatively new addition to homeowners policies. Its coverage is provided in clear, unambiguous language. It is an additional coverage, or, perhaps, more accurately, an additional optional coverage offered the insured. If his house is destroyed, he can rebuild it, within the limits of the coverage, even though the cost may exceed the actual cash value of the insured dwelling. *There is absolutely nothing in the policy language, however, that requires the insured to forfeit the actual cash value coverage if he elects to forgo the optional replacement cost.*

*State Farm Fire & Casualty Co. v. Ponder,* 469 So.2d 1262, 1266 (Ala.1985) (emphasis added).[7] Like *Ponder,* the policy in this case entitles plaintiff to recover the actual cash value of his loss whether or not he repaired the damaged property. *See also Harrington v. Amica Mutual Insurance Co.,* 223 A.D.2d 222, 226, 645 N.Y.S.2d 221, 223 (N.Y.App.Div.1996)

("Plaintiff would have been entitled to recover the actual cash value from defendant even if a third party had completed the repairs at no cost to plaintiff."). What plaintiff actually spent to repair his property—indeed, whether he repaired the property at all—does not affect his right to recover actual cash value. The fact that plaintiff was able to complete the repairs for less than the appraisal award does not result in a windfall. Plaintiff was covered for the actual cash value of his loss and is entitled to recover that sum, less his deductible.

By withholding $48,083 in contractor's overhead and profit and $22,856 in sales tax from plaintiff's actual cash value award, NHIC breached its obligations under the insurance policy. Accordingly, plaintiff's motion for partial summary judgment on his breach of contract claim is granted. NHIC's motion for summary judgment is denied.[8]

### IV.

■■■ Defendants also seek summary judgment with respect to plaintiff's extra-contractual claims for bad faith and violations of the Texas Insurance Code. The only argument offered by defendants in support of their motion is that "neither AIGCS nor New Hampshire breached the policy of insurance." (Def. MSJ at 13–14, ¶ 28). Indeed, the Texas Supreme Court has held that "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."

---

**7.** The policy in *Ponder* allowed the insured to either make a claim for replacement cost or actual cash value supplemented by additional replacement cost coverage. *Ponder,* 469 So.2d at 1263. After the insured's home was destroyed by fire, the insurer paid more than $61,000 based on a cost estimate to repair the property. The insured chose to rebuild the home himself at a cost of $45,000. The Alabama Supreme Court rejected the insurer's

argument that by choosing to rebuild, the insured was "locked into a replacement cost basis." *Id.* at 1266.

**8.** AIG also moves for summary judgment on plaintiff's breach of contract claim. However, plaintiff has not asserted such a claim against AIG. (Plf. First Am. Class Action Compl. ¶¶ 17–20). Accordingly, AIG's motion is denied as moot.

*See Republic Insurance Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995), *citing O'Malley v. United States Fidelity & Guaranty Co.,* 776 F.2d 494, 500 (5th Cir.1985). However, the court has determined that NHIC breached the insurance contract by withholding contractor's overhead and profit and sales tax from plaintiff's actual cash value award. This precludes summary judgment in favor of defendants.[9]

### CONCLUSION

Plaintiff's motion for partial summary judgment is granted with respect to his breach of contract claim. Defendants' motion for summary judgment is denied in its entirety.

SO ORDERED.

---

9. In their reply brief, defendants argue that "plaintiff has presented no evidence that NHIC or AICS misrepresented or misstated anything about the policy's provisions or its coverages." (Def. Reply & Resp. to Plf. Cross–MSJ at 13). The court will not consider this belated argument raised for the first time in a reply. *Lacher v. West,* 147 F.Supp.2d 538, 540 & n. 2 (N.D.Tex.2001); *Senior Unsecured Creditors' Committee of First RepublicBank Corp. v. FDIC,* 749 F.Supp. 758, 772 (N.D.Tex.1990).