HESTER, Judge.
 

 The issue presented herein is whether an insurer, which has agreed to pay repair or replacement costs less depreciation in advance of actual repair or replacement of a covered loss, may automatically withhold both depreciation and a flat twenty percent representing contractor overhead and profit from its advance payment. We conclude that it may not and reverse the grant of summary judgment in favor of the insurer in this action.
 
 [1]
 
 We remand for further proceedings.
 

 
 *220
 
 Alex and Janet Gilderman instituted this class action on behalf of themselves and other insureds suffering a covered loss on or after January 1, 1991, under a homeowners’ policy of insurance issued by State Farm Insurance Companies (“State Farm”) in Pennsylvania and containing the following, or similar language:
 

 (2)
 
 We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:
 

 (a) the limit of liability this policy applying to the building;
 

 (b) the replacement cost of part of the building damaged for equivalent construction and use on the same premises; or
 

 (c)
 
 the amount actually and necessarily spent to repair or replace the damaged building.
 

 (3)
 
 We will pay the actual cash value of the damage, up to the policy limits, until actual repair or replacement is completed.
 

 (emphasis added).
 

 The type of homeowners’ policies at issue provide replacement cost coverage. We quote the brief of Pennsylvania Defense Institute, which was granted permission to file as amicus curiae. The brief succinctly describes what replacement cost coverage is designed to provide for an insured:
 

 Replacement cost coverage was devised to remedy the shortfall in coverage which results under a property insurance policy compensating the insured for actual cash value alone. That is, while a standard policy compensating an insured for the actual cash value of damaged or destroyed property makes the insured responsible for bearing the cash difference necessary to replace old property with new property, replacement cost insurance allows recovery for the actual value of property at the time of loss, without deduction for deterioration, obsolescence, and similar depreciation of the property’s value.
 

 
 *221
 
 Brief of Amicus Curiae at 8, quoting, Annot.,
 
 Construction and Effect of Property Insurance Provision Permitting Recovery of Replacement Cost of Property,
 
 1 A.L.R. 5th 817, 827-28 (1992).
 

 In the type of policy at issue, however, the insured may not receive the full repair or replacement cost of a covered loss until repair or replacement occurs. Instead, they receive “actual cash value” for a loss until repairs are made, as follows. Under clause three, the insurer agrees to pay “actual cash value” until repair or replacement actually occurs. Under clause two, the insured receives full repair or replacement costs (not exceeding the policy limits), without deduction for depreciation, after the repairs have been made. Thus the insured may reap the benefit of his depreciation coverage only if he actually repairs or replaces the covered loss.
 

 “Actual cash value” is not defined in the policy. However, as the above quote would indicate, actual cash value consistently has been interpreted as meaning “the actual cost of repair or replacement less depreciation.”
 
 Canulli v. Allstate Insurance Co.,
 
 315 Pa.Super. 460, 462 A.2d 286 (1983). Indeed, State Farm concedes, “In
 
 Canulli,
 
 the court defined actual cash value as ‘the actual cost of repair or replacement less depreciation.’ ” Appellant’s brief at 31.
 

 The issue presented in this appeal concerns State Farm’s routine practice of deducting both depreciation
 
 and
 
 a flat twenty percent from all its repair or replacement cost estimates and offering an advance check for this amount to its insureds as payment of “actual cash value.” The twenty percent represents contractor overhead and profit.
 

 At this point, we are compelled to indicate precisely what this appeal does
 
 not
 
 involve. This action is necessitated by the fact that the entire brief of amicus curiae and a substantial portion of the brief of State Farm is devoted to an issue not raised by appellants. The issue discussed is whether the provision allowing for payment of full repair or replacement costs only in the event of repair or replacement is void as against public policy. Amicus curiae and State Farm strenu
 
 *222
 
 ously defend the enforceability of its requirement that repair or replacement occur before full repair or replacement costs are paid. However, at no point do appellants argue that they were entitled to full repair or replacement costs without a depreciation deduction prior to actual repair or replacement.
 

 Instead, appellants have framed the interpretation issue presented to this court as follows:
 

 I. THE ACTUAL CASH VALUE OF A COVERED PROPERTY LOSS INCLUDES A GENERAL CONTRACTOR’S OVERHEAD AND PROFIT. WHERE THE CONTRACT OF INSURANCE FAILS TO DEFINE ACTUAL CASH VALUE AND IS SILENT AS TO WHAT IS SUBSUMED WITH THAT TERM, STATE FARM CANNOT WITHHOLD PAYMENT FOR A GENERAL CONTRACTOR’S OVERHEAD AND PROFIT FROM THE ACTUAL CASH VALUE PAYMENT OF BENEFITS UNDER ITS REPLACEMENT VALUE POLICY.
 

 Appellants’ brief at 1;
 
 see also
 
 Appellants’ brief at 8 (“The fundamental inquiry underlying this litigation is precisely where the cost for a general contractor’s overhead and profit fit into the loss payment equation, i.e. replacement cost less depreciation = actual cash value.”).
 

 Appellants’ argument is: prior to repair or replacement, they are entitled to “actual cash value,” as expressly provided in the policy; “actual cash value” means “repair or replacement cost less depreciation”; repair or replacement costs necessarily include contractor overhead and profit; and thus, State Farm may not deduct automatically twenty percent representing contractor costs from its estimate of actual repair or replacement costs.
 

 This misguided effort to re-frame the issue on appeal creates the appearance of a thinly disguised attempt by State Farm and amicus curiae to have us limit the holding of
 
 Ferguson v. Lakeland Insurance Co.,
 
 408 Pa.Super. 332, 596 A.2d 883 (1991). In
 
 Ferguson,
 
 we struck down as void against public policy a provision requiring an insured who procured replacement coverage to actually replace property before re
 
 *223
 
 ceiving the full replacement value of the property. In that case, the insurer denied coverage. We reasoned that it was unconscionable to require insureds to procure from their own funds, which they may not have, replacement property prior to receipt of full replacement cost since the insureds expected to receive such coverage by purchasing replacement value coverage.
 

 State Farm and amicus curiae are correct in noting that appellants ask us to apply the reasoning in
 
 Ferguson.
 
 However, appellants do so only in the context of the stated issue on appeal,
 
 viz,
 
 appellants suggest that it is unfair for State Farm to require them to pay twenty percent for contractor’s overhead and profit from their own funds when they may not have such funds in light of the fact that the insurer has agreed to pay repair or replacement costs less only depreciation prior to repair or replacement and in light of the fact that contractor’s overhead and profit is a component part of repair or replacement costs. Appellants have not asked us to declare void as against public policy the provision requiring repair or replacement prior to payment of full repair or replacement costs. Amicus curiae and State Farm will have to wait to have the issue re-visited — in a case wherein it is raised.
 

 We now examine the record to determine whether State Farm always deducts the twenty percent or whether it does so only in cases where it seems unlikely that an insured would procure a contractor to repair or replace a covered loss. We do this since it is relevant to our determination of whether the practice is improper.
 

 Appellants instituted this action with regard to losses occurring on or after January 1, 1991. They allege in their complaint that since that date, State Farm has always deducted twenty percent from the top of its repair or replacement estimates for purposes of computing the actual cash value of a loss. State Farm never filed an answer to this allegation. Instead, it filed preliminary objections, and the parties proceeded to file cross-motions for summary judgment pursuant to stipulated facts. In the cross-motions for summary judgment, the issue presented, which both parties concede involved
 
 *224
 
 a question which controlled the outcome of the case, was whether State Farm was permitted to deduct this twenty percent.
 

 Thus, there seems to'be no question that State Farm always deducts the twenty percent in addition to depreciation from its actual cash value calculation. Further, at page twenty-nine of its brief, where State Farm begins its discussion of whether this twenty percent should be included in its repair or replacement cost estimates, State Farm defends its actions by stating the purpose of its practice is “to apply the insurance contract in a consistent manner which accurately and properly addresses how loss settlement payments are made in all property damage claims scenarios.... ” Appellee’s brief at 29. Thus, we assume for purposes of this appeal that State Farm always deducts twenty percent from its repair or replacement cost estimates.
 

 The positions of the parties are as follows. Appellant argues that contractor overhead and profit must always be included in repair or replacement cost estimates. State Farm counters that contractor overhead and profit never has to be included in repair or replacement cost estimates since contractors are not always used to repair or replace damaged property.
 

 We are guided by the following principles in deciding the issue. The interpretation of a policy of insurance is a question of law, subject to full review by this Court.
 
 Carpenter v. Federal Insurance Co.,
 
 432 Pa.Super. III, 637 A.2d 1008 (1994);
 
 State Farm Mutual Insurance Co. v. Judge,
 
 405 Pa.Super. 376, 592 -A.2d 712 (1991). In construing a policy, coverage provisions are interpreted to afford the greatest possible protection to the insured, and the insured’s expectations are our focus.
 
 State Farm Mutual Insurance Co. v. Judge, supra.
 
 Furthermore, words in an insurance contract are to be given their plain and ordinary meaning.
 
 Carpenter v. Federal Insurance Co., supra.
 

 In the present case, State Farm clearly agreed to pay to its insureds the “actual cash value” of a covered loss whether or
 
 *225
 
 not repairs or replacement actually occur. Actual cash value has consistently been interpreted to mean repair or replacement costs less depreciation. Repair or replacement costs logically and necessarily include any costs that an insured reasonably would be expected to incur in repairing or replacing the covered loss.
 

 First, we discuss appellants’ claim that repair or replacement cost estimates “necessarily” include twenty percent for a general contractor’s overhead and profit. We. believe that there clearly are certain types of property damage claims which will not require the services of a general contractor. An example is where the loss involves only a damaged pipe, and a plumber alone normally would be called to perform all necessary repairs. In this respect, we therefore agree with State Farm’s position that there are some types of covered losses where the services of a general contractor normally would not be utilized. Thus,
 
 in some cases,
 
 contractor expenses would not have to be included in repair or replacement cost estimates.
 

 Indeed, appellants implicitly concede that general contractors are not always needed, noting that “it is generally accepted in the building trade that if
 
 more than three trade categories
 
 of subcontractors aré involved in the repairs, the owner is entitled to the services of a general contractor to obtain bids, hire the subcontractors and coordinate/supervise the work.” Appellants’ brief at 14-15 (emphasis added).
 

 On the other hand, however, there are types of property damage where a homeowner would use the services of a general contractor. There are many instances where the insured reasonably would be expected to call a contractor, especially where there is extensive damage to a home requiring the use of more than one trade specialist. Thus, State Farm may not make repair or replacement estimates and then deduct twenty percent representing contractor’s fees when those expenses reasonably are expected to be incurred.
 

 State Farm defends its actions first by observing that a contractor’s costs are contingent and may never be incurred.
 
 *226
 
 State Farm posits that it is unfair for an insured to receive advance payment for such expenses. We make two observations in regard to this argument. First, contractor expenses may well be contingent; however, the same can be said of all repair or replacement costs. For example, the insured may be a plumber, repair a covered loss himself, and incur no labor costs. The insured may be able to obtain goods at wholesale, used, or free and never incur the retail cost of parts. All repair or replacement costs are, in theory, “contingent” prior to being incurred.
 

 Second, and more importantly, the issue is not whether a given cost is contingent. The issue is what State Farm agreed to pay to its insureds prior to actual repair or replacement. It agreed to pay “actual cash value,” which means “repair or replacement cost less depreciation.” Thus, the real inquiry is what is included in “repair or replacement costs.” We hold that repair or replacement costs include any cost that an insured is reasonably likely to incur in repairing or replacing a covered loss. In some instances, this will include use of a general contractor and his twenty percent overhead and profit.
 

 In this respect, we observe that an insurer owes its insured a duty of good faith and fair dealings:
 

 The Pennsylvania Supreme Court has long held that an insurer must act with the “utmost good faith” toward its insured.
 
 Fedas v. Insurance Co. of Pa.,
 
 300 Pa. 555, 558, 151 A. 285, 286 (1930);
 
 see also Dercoli v. Pennsylvania Nat’l Mut. Ins. Co.,
 
 520 Pa. 471, 554 A.2d 906 (1989);
 
 Cowden v. Aetna Casualty & Sur. Co.,
 
 389 Pa. 459, 134 A.2d 223 (1957). This heightened duty is necessary because of the special relationship between an insurer and its insured and the very nature of the insurance contract. The insurer’s duty of good faith, therefore, is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy’s provisions which give the insurer the right to handle claims and control settlement.
 
 See, e.g., Gray v. Nationwide Mut. Ins. Co.,
 
 422 Pa. 500, 223 A.2d 8 (1966).
 

 
 *227
 

 Romano v. Nationwide Mutual Fire Insurance Co.,
 
 435 Pa.Super. 545, 550, 646 A.2d 1228, 1231 (1994). Good faith includes an obligation to make reasonable investigation into a fact.
 
 Id.
 
 State Farm, not an insured entitled to such costs, benefits by State Farm’s uniform retention of the twenty percent. Supporting this practice under the guise of treating all insureds the same is disingenuous. All losses are not the same.
 

 State Farm offers a second rationale for its practice, arguing that an insured would receive a windfall if permitted to recover a repair or replacement cost which never may be incurred. In this respect, we note that insureds under these policies have paid an additional premium for replacement cost coverage so that the insured can afford to repair or replace a loss at current market value and essentially keep the value of his property the same. An insured loses the benefit of the replacement cost coverage by electing not to repair or replace. It can hardly be said that an insured reaps a windfall by obtaining payment of actual cash value determined in a fair and reasonable manner when that is precisely what the insurer has agreed to pay under its policy in advance of actual repair or replacement.
 

 Motion to strike portions of the reproduced record granted. Order reversed. Case remanded for a determination of class certification and further appropriate proceedings to resolve the claims in appellants’ complaint in light of our determination herein. Jurisdiction relinquished.
 

 [1]
 

 . The contested order was entered on November 16, 1993, and appellants filed a timely appeal from that order. The trial court subsequently entered an order indicating that the November 16, 1993 order was interlocutory and asking us to certify the order for interlocutory review. We quashed the appeal from the second order since the appeal from the first order was pending.
 

 Thus, there appears to be a question about the finality of the November 16, 1993 order, which entered ‘‘partial” summary judgment in favor of State Farm. The practice of deducting the twenty percent formed the gravamen of all appellants' counts in their complaint, and the practical effect of the order was to place appellants out of court, preventing them from recovering in this action against State Farm. Accordingly, it was a final, appealable order.
 
 See In re Interest of M.B.,
 
 388 Pa.Super. 381, 565 A.2d 804 (1989) (where practical effect of order was to place litigant out of court on claims in action, it was a final, appealable order). Indeed, the effect of the ruling was to dismiss the complaint, which long has been a final, appealable ruling.
 
 See Harcourt v. General Accident Ins. Co.,
 
 419 Pa.Super. 155, 158 n. 1, 615 A.2d 71, 73 n. 1 (1992).