[766 NYS2d 719]

DONALD MAZZOCKI et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v STATE FARM FIRE & CASUALTY COMPANY, Appellant.

Third Department, October 30, 2003

## APPEARANCES OF COUNSEL

*White & Case L.L.P.*, New York City (*Richard G. Liskov* of counsel), for appellant.

*Wilkofsky, Friedman, Karel & Cummins*, New York City (*Mark L. Friedman* of counsel), for Donald Mazzocki, respondent.

*Duke, Holzman, Yaeger & Photiadis L.L.P.*, Buffalo (*Charles C. Ritter, Jr.* of counsel), for John F. Lupiani and another, respondents.

## OPINION OF THE COURT

Rose, J.

Plaintiffs sustained storm damage to buildings on their respective properties and filed claims for the actual cash value of the damage under homeowner's insurance policies issued by defendant. When defendant excluded the profit and overhead expenses of a general contractor in calculating the actual cash value, plaintiffs commenced this class action alleging that de-

fendant breached the terms of its policies with them and others similarly situated. Specifically, plaintiffs cited this loss settlement provision of the policies:

> "We will pay the cost to repair or replace buildings . . . subject to the following: (1) until actual repair or replacement is completed, we will pay the actual cash value of the damage to the buildings, up to the policy limits, not to exceed the replacement cost of the damaged part of the buildings . . . . Any additional payment is limited to the amount you actually and necessarily spend to repair or replace the damaged buildings . . . ."

Plaintiffs then moved for partial summary judgment as to defendant's liability, class action certification and an order describing class members. Defendant cross-moved for summary judgment dismissing the complaint on the ground that its practice of paying profit and overhead only when a general contractor is actually employed does not constitute a breach of its policies. Supreme Court held that the collateral estoppel effect of a Michigan appellate court's ruling regarding the same policy language in *Salesin v State Farm Fire & Cas. Co.* (229 Mich App 346, 367, 581 NW2d 781, 790 [1998], *lv denied* 459 Mich 934, 615 NW2d 738 [1998]) precluded defendant from contesting whether it can withhold profit and overhead of a general contractor, even if not incurred, in calculating the actual cash value of an insured's loss. Based on that alone, Supreme Court granted plaintiffs summary judgment on their breach of contract cause of action and certified the proposed class.* Defendant now appeals.

Initially, we find that collateral estoppel does not apply. The doctrine of collateral estoppel requires "that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding" (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276 [1988], *cert denied* 488 US 1005 [1989]; *see Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]). The issue presented here, however, is not identical to that resolved in *Salesin v State Farm Fire & Cas. Co.* (*supra*). There, defendant initially included general contractor overhead and profit in its

---

* Supreme Court defined the class members as property owners who (1) have or had homeowner's or other insurance policies issued by defendant containing loss settlement provisions substantially similar to those in plaintiffs' policies, (2) sustained covered property damage within a specified time period, (3) made claims for that damage and (4) did not receive payment for general contractor's overhead and profit.

estimate of replacement cost and then deducted those items from actual cash value. Applying its interpretation of defendant's policy language to those facts, the *Salesin* court concluded that defendant cannot routinely deduct overhead and profit from actual cash value merely because they may not be incurred (229 Mich App at 368-369, 581 NW2d at 791). Here, the issue is whether defendant's refusal to include overhead and profit in its estimate of replacement cost in the first instance constitutes a breach of the terms of its policies. Moreover, collateral estoppel is inapplicable because interpretation of the policy language presents a pure question of law (*see American Home Assur. Co. v International Ins. Co.*, 90 NY2d 433, 440 [1997]; *Avon Dev. Enters. Corp. v Samnick*, 286 AD2d 581, 582 [2001]). Also, there are other inconsistent judicial rulings regarding defendant's policy language (*see e.g. Karl v State Farm Fire & Cas. Ins. Co.*, US Dist Ct, Colo, Mar. 19, 2002, No. 97-WY-2593, slip op at 11-12; *Snellen v State Farm Fire & Cas. Co.*, 675 F Supp 1064, 1068 [US Dist Ct, WD Ky 1987]) that make it unwarranted to give *Salesin* preclusive effect (*see* Restatement [Second] of Judgments § 29 [4]; *cf. Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 458-459 [1985]).

■ As a result, Supreme Court erred in summarily holding defendant liable to plaintiffs based solely on the ruling in *Salesin*. Rather, it was incumbent on Supreme Court to first interpret the policy language and then apply it to the facts presented on plaintiffs' motion for summary judgment. Although Supreme Court did not do so, we will—in the interest of judicial economy—interpret the disputed policy provision in light of the persuasive reasoning in *Salesin* and remit to Supreme Court only the factual issue of whether, under that interpretation, the actual cash values of plaintiffs' particular losses should have included profit and overhead.

Defendant's policies provide that until the damaged property is actually repaired or replaced, it will pay the actual cash value of the damage not to exceed replacement cost or the policy limits. Actual cash value is payable regardless of whether the property is eventually repaired or replaced. Under New York law, "[t]he determination of actual cash value is made under a broad rule of evidence which allows the trier of fact to consider 'every fact and circumstance which would logically tend to the formation of a correct estimate of the loss' " (*Cass v Finger Lakes Coop. Ins. Co.*, 107 AD2d 904, 905 [1985], quoting *McAnarney v Newark Fire Ins. Co.*, 247 NY 176, 184 [1928]). Since defendant does not dispute that the term "actual cash

value" here means replacement cost minus depreciation, the issue becomes whether replacement cost includes a general contractor's profit and overhead even if not actually incurred. The term "replacement cost" itself is not defined in defendant's insurance policies.

The court in *Salesin* reasoned that since the replacement cost utilized to determine actual cash value is an estimate of all costs that would likely and reasonably be incurred by the insured in repairing or replacing the damaged property, the expense of a general contractor cannot be deducted from such an estimate unless such services are not likely to be required (*see Salesin v State Farm Fire & Cas. Co.*, 229 Mich App at 367-368, 581 NW2d at 791, citing *Gilderman v State Farm Ins. Co.*, 437 Pa Super 217, 226, 649 A2d 941, 945 [1994], *appeal denied* 541 Pa 626, 661 A2d 874 [1995]). Applying the same logic, we find that the term "replacement cost"—as opposed to "actual replacement cost"—in defendant's policies can reasonably be interpreted to include profit and overhead whenever it is reasonably likely that a general contractor will be needed to repair or replace the damage. We find no merit in defendant's argument that since such an expense may not be actually incurred, it is contingent and should not be included. Like the court in *Gilderman v State Farm Ins. Co.* (437 Pa Super at 226, 649 A2d at 945), we conclude that a replacement cost estimate is equally hypothetical or contingent as to all materials, labor and contractor services.

This reading of "replacement cost" demonstrates that defendant did not meet its burden of showing that its interpretation is the only fair construction of the policy. In our view, the policy language is at best equivocal on the subject. Accordingly, we construe the policies' terms against defendant (*see Westview Assoc. v Guaranty Natl. Ins. Co.*, 95 NY2d 334, 340 [2000]; *Charles F. Evans Co. v Zurich Ins. Co.*, 95 NY2d 779, 780-781 [2000]; *Butler v New York Cent. Mut. Fire Ins. Co.*, 274 AD2d 924, 925 [2000]; *Primavera v Rose & Kiernan*, 248 AD2d 842, 843 [1998]; *Harrington v Amica Mut. Ins. Co.*, 223 AD2d 222, 228 [1996], *lv denied* 89 NY2d 808 [1997]) and hold that it was obligated to include profit and overhead in replacement cost, and thereby in actual cash value, whenever a general contractor would likely be needed.

Under this interpretation, plaintiffs can establish their breach of contract claim only upon proof of the likely necessity of a general contractor's services in the repair or replacement of their damaged property. While plaintiffs' moving papers contain

no allegation or proof of such necessity, a triable issue of fact on this point is nonetheless raised in the record because, in offering to pay contractor profit and overhead if incurred, defendant's written estimates of plaintiffs' losses appear to predetermine their need for a general contractor. These loss estimates, which were prepared by defendant's claims representatives, list the actual cash values proposed to be paid by defendant. Under the heading of "Maximum Additional Amounts Available If Incurred," the estimates also include percentage amounts for profit and overhead.

Other record evidence also suggests that these amounts were included because a general contractor was deemed necessary in the adjustment of plaintiffs' losses. At several points in his deposition testimony, defendant's senior claims consultant, Tony Prosperini, stated that it was the responsibility of defendant's claims representative, in preparing the estimate of an insured's loss, to determine whether or not a general contractor would be required in repairing or replacing the damaged property. He testified that if a claims representative estimates that a general contractor may be required, then the loss estimate would advise the insured that additional amounts for profit and overhead would be paid if actually incurred. Prosperini also testified that if the need for a general contractor were questionable, then the insured would be advised that such costs would be "considered" at a later time if actually incurred. Defendant's Operation Guide appears to confirm Prosperini's testimony and implies that the need for a general contractor was to be determined in preparing the loss estimate. Prosperini's later affidavit explaining his earlier testimony simply points out an issue of fact as to the implications of defendant's loss estimates.

Given this issue of fact, summary judgment is inappropriate in either party's favor. If the trier of fact were to find that defendant's estimates effectively concede that plaintiffs' losses require a general contractor, defendant then would be liable to these plaintiffs for breach of contract. Also, if such a finding were to be made, then the members of the class proposed by plaintiffs would be properly identified as comprising only those insureds whose policies included substantially similar loss settlement provisions and whose loss estimates offered additional amounts for profit and overhead. Contrary to defendant's contention, the individualized damages of the resulting class members would not preclude class certification, for the amounts of unpaid profit and overhead could readily be ascertained from each member's loss estimate (see e.g. Broder v MBNA Corp., 281 AD2d 369, 371 [2001]).

If, however, the trier of fact were to find that defendant's loss estimates do not concede that a general contractor would be reasonably likely, then defendant would be entitled to dismissal of plaintiffs' breach of contract cause of action inasmuch as they offered no other evidence that their own losses were reasonably likely to require the services of a general contractor. In any event, if loss estimates such as plaintiffs' fail to establish such a reasonable likelihood, then a class action would not be appropriate because defendant's liability would require proof by each insured that a general contractor would likely be needed to repair or replace his or her damaged property. This issue's resolution would be unique for each member, and it would sufficiently predominate over the common questions of fact and law so as to require denial of class certification (*see Banks v Carroll & Graf Publs.*, 267 AD2d 68, 69 [1999]; *Mitchell v Barrios-Paoli*, 253 AD2d 281, 292 [1999]; *Evans v City of Johnstown*, 97 AD2d 1, 3 [1983]).

CREW III, J.P., SPAIN, CARPINELLO and KANE, JJ., concur.

Ordered that the orders and judgment are modified, on the law, without costs, by reversing so much thereof as granted plaintiffs' motion for partial summary judgment as to liability, certified the class and directed the manner and method of service of class notice; said motion granted solely to the extent of declaring the meaning of the loss settlement provision of defendant's insurance policies and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.