J-A31006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| KONRAD KURACH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRUCK INSURANCE EXCHANGE | : | |
| | : | |
| Appellant | : | No. 1726 EDA 2017 |

Appeal from the Order Entered April 21, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2015 No. 00339

| MARK WINTERSTEEN, INDIVIDUALLY | : | IN THE SUPERIOR COURT OF |
| AND ON BEHALF OF ALL OTHERS | : | PENNSYLVANIA |
| SIMILARLY SITUATED | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRUCK INSURANCE EXCHANGE | : | No. 1730 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered April 21, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2015 No. 03543

BEFORE: PANELLA, J., OLSON, J., and STEVENS[*], P.J.E.

MEMORANDUM BY PANELLA, J.: **FILED AUGUST 24, 2018**

Truck Insurance Exchange ("Truck") appeals from the orders granting

partial summary judgment to its insureds, Konrad Kurach and Mark

_____

[*] Former Justice specially assigned to the Superior Court.

Wintersteen on the issue of whether general contractor overhead and profit ("GCOP") is to be included in an actual cash value settlement under their insurance policies with Truck. We conclude the insurance policies explicitly excludes GCOP from actual cash value settlements. Furthermore, we conclude Pennsylvania law does not evince a policy requiring the inclusion of GCOP in such settlements. We therefore reverse and remand for further proceedings.

As an initial matter, we must address our jurisdiction to entertain this appeal. An appeal lies only from a final order unless otherwise permitted by rule or statute. **See McCutcheon v. Philadelphia Electric Company**, 788 A.2d 345, 349 (Pa. 2002). In relevant part, a final order is defined as an order that "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b)(1).

Here, it is undisputed that the order appealed from did not dispose of all claims and of all parties. Rather, the parties and the trial court believe jurisdiction is proper under Rule 341(c). Under this rule, a court may transform an order that disposes of less than all claims and all parties into a final order upon an express determination that an immediate appeal would facilitate resolution of the entire case. **See id**.

We may review the merits of a trial court's decision to certify an order under Rule 341(c) *sua sponte*. **See F.D.P. v. Ferrara**, 804 A.2d 1221, 1228 n.6 (Pa. Super. 2002). A certification of finality pursuant to Rule 341 should only be made in the most extraordinary of circumstances. **See Liberty State Bank v. Northeastern Bank of Pa.**, 683 A.2d 889, 890 (Pa. Super. 1996).

- 2 -

In order to properly certify an order as final, a trial court must consider, at a minimum, the following factors:

(1) whether there is a significant relationship between adjudicated and unadjudicated claims;

(2) whether there is a possibility that an appeal would be mooted by further developments;

(3) whether there is a possibility that the court or administrative agency will consider issues a second time; [and]

(4) whether an immediate appeal will enhance the prospects of settlement.

***Pullman Power Prod. Of Can., Ltd. v. Basic Engineers, Inc.***, 713 A.2d 1169, 1172 (Pa. Super. 1998) (citation omitted). And, even after examining these factors, a trial court should "only certify a non-final order for immediate appeal … where the failure to do so would result in an injustice which a later appeal can not correct." ***Id.***, at 1173 (quotation and citation omitted).

Here, the trial court provided the following rationale for its certification:

All four factors weigh heavily in favor of permitting immediate appeal. As to the first factor, there is a significant relationship between the adjudicated breach of contract claim and the remaining issues in the case, which are: (1) whether class certification is appropriate, (2) plaintiff's claim for bad faith, and (3) plaintiff's damages. Our analysis of Truck's insurance policy language and our determination that Truck may not withhold general contractor overhead and profit from Step-1 actual cash value payments are central to determining whether this case may proceed as a class action. This is because putative class members are likely subject to identical contractual language. As to plaintiff's bad faith claim, our analysis of Truck's pertinent policy language is also related to whether the insurer had a reasonable basis for denying benefits and whether Truck knew, or recklessly disregarded, its own lack of reasonable bass to deny plaintiff's Step 1 actual value claim. Our statutory bad faith analysis is quite clearly related to whether plaintiff is entitled to damages on its breach of contract claim. As to the second and third factors, it is

- 3 -

unlikely that a certified appeal will be mooted by further developments or that we will consider the breach of contract issue a second time. Regarding the fourth factor, while the parties dispute whether immediate appellate review will enhance settlement prospects, it is hard to imagine that an affirmance will not, at the very least, encourage Truck to reckon with the consequences. Nor is it untrue that reversal will likely result in dismissal of the individual cases and make class certification unlikely. The four factors therefore weigh very strongly in favor of certifying our April 20, 2017 [o]rder as a final order.

We also find that an immediate appeal of the April 20, 2017 [o]rder is necessary to prevent injustice to Truck Insurance under extraordinary circumstances presented by this putative class action litigation. Without appellate court clarification and analysis of the issues, Truck faces uncertainty in a class action environment on the litigation's central issue: whether Truck is permitted to withhold estimated general contractor overhead and profit when calculating Step 1 actual value. This legal analysis is, of course, closely related to plaintiff's remaining claims. Clarification from the appellate court prevents injustice because it is wrong to compel Truck to engage in broad discovery and bear foreseeably substantial costs on class certification before knowing for sure whether its contract language is unlawful. Certification of our April 20, 2017 [o]rder and its underlying legal question will prevent injustice if the [o]rder is reversed. This injustice consists of unnecessarily expending money and employee labor time to comply with potentially voluminous discovery associated with class certification litigation. This is money and time that cannot be recovered.

Finally, immediate appellate review promotes judicial economy because appellate analysis will provide instruction, one way or the other, on open trial level issues relating to both class certification and bad faith. Pre-trial review in the event of affirmance is expected to be extensive and should be provided only after the threshold legal question is settled.

We conclude the court's explicit rationale for certification is sound. We thus have jurisdiction over this appeal, and turn to the merits.

The crux of this case is the interpretation and application of an insurance agreement. The essential facts are undisputed for purposes of this appeal. Wintersteen and Kurach purchased homeowner's insurance from Truck, and each suffered a water damage loss covered by their policies. They submitted claims for these losses to Truck under their policies.

Truck reviewed the claims, and determined that the services of a general contractor would likely be necessary to repair the damaged property. Neither Wintersteen nor Kurach pursued the option to repair their damaged property. Rather, they pursued an alternative remedy provided by their policies: actual cash value settlement. Truck calculated the amount of the actual cash value settlement excluding GCOP. Kurach and Wintersteen believe this exclusion is improper under Pennsylvania law.

Wintersteen is a putative class action plaintiff, while Kurach seeks only to vindicate his own rights. Both agreed to litigate the dispositive legal issue through cross-motions for summary judgment. Kurach and Wintersteen argued Pennsylvania law required that GCOP be included in the calculation of actual cash value. Truck argued the policy explicitly excluded GCOP from the calculation and that there is no positive Pennsylvania law overriding the definition in the policy. The court granted Kurach and Wintersteen's motions, and denied Truck's. This timely appeal followed.

We review a challenge to the entry of summary judgment as follows.

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Constr. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citations omitted).

Here, the facts are undisputed. The only questions before us concern the application of the policy's exclusions to the facts of the case. "The interpretation of an insurance policy is a question of law for the court." *Continental Cas. Co. v. Pro Machine*, 916 A.2d 1111, 1118 (Pa. Super. 2007). Our goal in interpreting the language of an insurance policy is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Kane v. State Farm Fire and Casualty Co.*, 841 A.2d 1038, 1042 (Pa. Super. 2003). (citation omitted). "The polestar of our inquiry is the language of the insurance policy." *Continental Cas. Co.*, 916 A.2d at 1118 (citation omitted). This Court's function in analyzing an insurance policy

is to construe words of common usage in their natural, plain, and ordinary sense. *See id*.

Here, the parties are in conflict over the issue of whether GCOP should have been included in the calculation of the actual cash value settlement. The homeowner's policy provides that "actual cash value settlements will not include [GCOP] … unless and until you actually incur and pay such fees and charges, *unless the law of your state requires that such fees and charges be paid with the actual cash value settlement*." R.R. 152a (emphasis altered).

The parties' arguments focus on two opinions from this Court. In the first, *Gilderman v. State Farm Insurance Company*, 649 A.2d 941 (Pa. Super. 1994), the parties fought over the definition of actual cash value in a homeowner's policy. "Actual cash value [was] not defined in the policy." *Id*., at 943 (quotation marks omitted). The panel observed that the term had been "consistently … interpreted as meaning the actual cost of repair or replacement less depreciation." *Id*. (citation and quotation marks omitted).[1]

Importantly, the panel did not address the issue of public policy. *See id*., at 944. Rather, the panel addressed the issue of what the insurer "agreed to pay to its insureds[.]" *Id*., at 945. And concluded that the insurer "agreed to pay actual cash value, … which include[s] any cost that an insured is

---

[1] As noted in *Kane*, the deduction of depreciation in calculating actual cash value is inconsistent with controlling precedent. *See* 841 A.2d at 1048. The depreciation deduction is not directly relevant to the issue on appeal in this case.

reasonably likely to incur in repairing or replacing a covered loss," minus depreciation. *Id*. Under this definition, actual cash value would sometimes include GCOP, given that it would sometimes be reasonably likely. *See id*.

However, *Gilderman* does not set forth binding Pennsylvania law defining how actual cash value is calculated. It defined the term in the absence of any definition in the policy itself, and thus analyzed the intent of the parties.

In contrast, the Truck policy at issue here explicitly defines actual cash value in a manner congruent with *Gilderman*: "Actual cash value – means the reasonable replacement cost at time of loss less deduction for depreciation and both economic and functional obsolescence." R.R. 388a. Also congruent with *Gilderman*, the policy promises to pay GCOP "only … if it is reasonably likely that the services of general contractor will be required to manage, supervise and coordinate the repairs." R.R. 152a. As highlighted above, the policy then precludes GCOP from actual cash value settlements "unless and until [the insured] actually incur[s] and pay[s]" GCOP. R.R. 152a.

In the second case, *Kane*, this Court held that explicit policy language could overcome definitions established by case law. *See* 841 A.2d at 1050 (refusing to use definition of actual cash value from case law, as it "would make the remaining policy language nonsensical.")

The language in Truck's homeowner's policy explicitly makes payment of GCOP contingent upon the insured actually incurring and paying GCOP, unless Pennsylvania state law requires its inclusion. Kurach and Wintersteen

have not identified any case that sets forth a public policy that actual cash settlement value must include GCOP.

As recognized in **Kane**, the definitions supplied by case law in Pennsylvania demonstrate the parties' intent only where the policy does not explicitly provide for a different outcome. Here, Truck's policy clearly and obviously provides that GCOP will not be paid to an insured until the insured actually incurs that cost. Thus, we conclude the trial court erred as a matter of law in granting summary judgment to Kurach and Wintersteen. Kurach and Wintersteen (and any similarly situated putative plaintiffs) are not entitled to receive a payment for GCOP from Truck until they incur that cost.

Orders reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/24/2018*